386 A.2d 597

C. Alton JEWELL and Patricia Jewell, Appellees,

v.

Buddy B. BECKSTINE and Margaret M. Beckstine, Appellants.

Superior Court of Pennsylvania.

Argued April 11, 1977.

Decided April 28, 1978.

Cyril T. Garvey, Sharon, for appellants.

Bernard Goldstone, Sharon, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

SPAETH, Judge:

This is an appeal from an order denying a motion for judgment n. o. v. or new trial in a negligence case.

Appellants, Buddy and Margaret Beckstine, own a dairy farm and some 110 Jersey milk cows. Appellee, Alton Jewell, on the date relevant to this case, was also a dairy

240

farmer, and in addition worked as a milk hauler; as a hauler, on every other day, as part of a route, he drove his tank truck to the Beckstines' farm, picked up the milk that had been produced there, and took it to the place where it was processed and bottled.

On February 6, 1973, Jewell slipped and fell in the Beckstines' "milking parlor." In reconstructing this accident, the following diagram will be useful. It was not made a part of the record but will serve in a general way to clarify what the milking parlor looked like.

Plaintiff Entered Here

(WEST)

Cows Exit Here

PIT

Plaintiff Fell Here

(EAST)

Cows Enter Here

At milking time Beckstine, or his wife, would go to the east end of the milking parlor, open a manually operated door, and admit four cows from the holding area outside the parlor; the cows would take their places in milking stalls along one side of the milking "pit". The milking pit is a sunken area in the middle of the parlor, 28 inches deep, where the Beckstines could more conveniently work. They would wash the cows' udders with disinfectant, attach the milk pumps, and complete the milking process, while the cows ate grain from troughs in front of them. Then, a door at the west end of the milking parlor would be opened automatically, and the cows would go out. Meanwhile, Beckstine would have gone up the three steps at the east end of the pit, opened the manually operated door there, and admitted four more cows, who would then take their places in milking stalls on the other side of the pit, and the procedure just described would be repeated.

On the day in question, Jewell arrived at about 8:00 a. m. to pick up the Beckstines' milk. Beckstine had not quite finished milking, so Jewell went into the milking parlor from the west end, and went down the three steps into the pit, where he and Beckstine chatted awhile. When Beckstine was ready for more cows to be brought in, he asked Jewell to stand on the landing at the east end so that the cows would not see him, for they would not enter if they could see a stranger in the parlor. Jewell went up the three steps at the east end of the parlor; he noticed at that time that the steps and the landing, which were concrete, were wet. When the cows had entered, he started back down into the pit. His foot slipped at the top of the steps, however, and he fell, landing on the lower steps on the small of his back. He looked to see what might have caused him to slip, and saw on the landing a boot print in cow manure. He also saw manure tracked from the steps to the door; he had not seen the manure there before.

Jewell brought this action against the Beckstines, alleging that they were negligent in not keeping the steps and landing dry and free from water and manure; in not warn-

ing him of the dangerous condition of the steps; and in not having safety devices, such as a railing, or indoor-outdoor carpeting, on the steps. A jury found the Beckstines liable. Their motion for judgment n. o. v. or new trial was denied, and they filed this appeal.

■ Appellants argue that no negligence was proved because there was no evidence that they had allowed the steps to become dangerous, or knew that they were dangerous. As appellants regard the evidence, it is as likely as not that appellee himself tracked the manure to the steps, for he walked through the pit, where manure inevitably is during milking. To the contrary, in our opinion the evidence was sufficient to permit the jury to find that Beckstine, in going to and from the door to let the cows in, had tracked manure onto the landing; that he should have known that manure on wet concrete would be slippery; and that he failed to warn appellee of that danger. Beckstine himself testified that it was not uncommon for manure to be on the steps and the landing.

■ We nevertheless hold that the court below erred in refusing to enter judgment n. o. v., for we have concluded that appellee was contributorily negligent as a matter of law. In arriving at this conclusion, we have borne in mind the often-stated principles, that contributory negligence will be declared as a matter of law only where it is so clear that there is no room for fair and reasonable disagreement, *Quinn v. Kumar*, 437 Pa. 268, 263 A.2d 458 (1970), and that on a motion for judgment n. o. v., the evidence and all reasonable inferences from it must be viewed in the light most favorable to the verdict winner, *Flickinger Estate v. Ritsky*, 452 Pa. 69, 305 A.2d 40 (1973); *Calhoun v. Jersey Shore Hospital*, 250 Pa.Super. 567, 378 A.2d 1294 (1977). Even so, two factors require the conclusion that appellee was contributorily negligent.[1]

1. It is possible that the conclusion that appellee was contributorily negligent deprives him of an element of his proof of negligence. That is, although appellee was a business invitee, appellants were not required to protect him from dangers they could reasonably believe

The first factor concerns appellee himself. He was a dairy farmer; he had been brought up on the farm, and had milked cows for years, and so he must have known the characteristics of cows, manure, and the sort of places frequented by cows. In his rounds as a milk hauler, appellee had been in other milking areas before, and indeed had often been in this one, so the surroundings were not strange to him. Moreover, he was doing nothing in the parlor that would have taken his attention away from possibly unsure footing. *Compare Hallbauer v. Zarfoss,* 191 Pa.Super. 171, 156 A.2d 542 (1960) (store owner's eye-catching displays of merchandise are factors to be considered on contributory negligence).

The standard of care for contributory negligence, like that for negligence, is the prudence of a reasonable person under like circumstances. *Quinn v. Kumar, supra; Krusinski v. Chioda,* 394 Pa. 90, 145 A.2d 681 (1958); Restatement (Second), Torts, § 464. When the person involved possesses superior knowledge in a given subject, he or she will be required to exercise the prudence of a reasonable person who possesses such knowledge. Restatement (Second), Torts, § 289 and comment *m.* Here, appellee should have been as alert as appellants to the possibility of slipping.

The second factor concerns appellee's description of the accident. Appellee testified that before he fell he saw that the steps and landing were wet, but that he did not see manure on the landing. Then, after he fell, he testified, he looked and did see the manure; indeed, he saw tracks of it "all the way across the landing to the door of the holding area." N.T. 33.

As an initial matter, when appellee noticed that the concrete steps and landing were wet, he was put on notice to

would be obvious. *Winkler v. Seven Springs Farm, Inc.,* 240 Pa.Super. 641, 359 A.2d 440 (1976); Restatement (Second), Torts § 343A. We shall, however, confine ourselves to a discussion of contributory negligence, without going into the question of whether a conclusion that there was contributory negligence requires the further conclusion that appellants did not violate their duty to a business invitee.

watch his footing. In addition, if, as he testified, appellee *looked and saw that the steps were wet,* absent a magical application of manure after he fell, he must have seen the manure as well.[2] Courts are not required to believe that which is contrary to human experience and the laws of nature, or what they judicially know to be incredible, and a verdict requiring such belief will not be sustained. *Lamp v. Pennsylvania R.R.,* 305 Pa. 520, 158 A. 269 (1931). Cf. *Smith v. United News Co.,* 413 Pa. 243, 196 A.2d 302 (1964) (person will not be heard to say he has looked where if he had looked, he must have seen what was plainly visible).

Reversed and remanded with instructions to enter judgment for appellants notwithstanding the verdict.

WATKINS, former President Judge, and VAN der VOORT, J., did not participate in the consideration or decision of this case.

2. Appellants testified that there were five double four-foot fluorescent fixtures on each side of the parlor. N.T. 258. Appellee himself agreed that there was no problem about visibility. N.T. 99–100. There was no testimony as to lack of contrast between the color of the floor and that of the manure.