620 A.2d 505

**Lawrence SCHNEIDER and Sandra Schneider, his wife, and Lawrence Schneider and Sandra Schneider as Parents and Natural Guardians of Bruce Schneider and William Schneider, Appellants,**

**v.**

**LINDENMUTH–CLINE AGENCY, INC., Pat Cline and Aetna Insurance Company.**

Superior Court of Pennsylvania.

Argued March 3, 1992.

Filed Feb. 11, 1993.

74

William F. Goodrich, Pittsburgh, for appellants.

Templeton Smith, Jr., Pittsburgh, for Lindenmuth–Cline, appellee.

Before DEL SOLE, JOHNSON and FORD ELLIOTT, JJ.

JOHNSON, Judge.

On this appeal, Lawrence and Sandra Schneider raise only two claims for relief: 1) The trial court should have entered judgment notwithstanding the verdict in their favor, and 2) The trial court erred in refusing certain requested points for charge of the Schneiders and granting certain points for charge of the defendants. We find both claims to be without merit. Accordingly, we affirm.

The distinguished trial court set forth the material facts in its Opinion denying post-trial motions as follows:

The Plaintiff, Lawrence Schneider, is a longtime client of the Defendant Lindenmuth–Cline Insurance Agency. Originally Mr. Schneider held a No–Fault automobile insurance policy from Motorists Mutual Insurance Company (hereinafter Motorists), under which Mr. Schneider received primary coverage for Medical benefits.

In 1983 Mr. Cline became an agent for Aetna Insurance Company (hereinafter Aetna) in addition to Motorists. At that time Aetna was engaged in a campaign to woo clients away from Motorists, and to that end offered a one time incentive commission to Mr. Cline for every policy he could change over. Additionally, due to Motorists' deteriorating financial condition, Mr. Cline felt that the switch to Aetna would be beneficial to his clients. Mr. Schneider was one of the people he contacted about the change.

A form letter was sent out in December of 1983 to the targeted clients together with a request for information. Mr. Schneider returned his letter with a handwritten inquiry about possibly omitting his deductible. Mr. Cline recalled a telephone conversation with Mr. Schneider when Mr. Cline advanced the alternatives of eradicating the deductible or switching to excess coverage as a means of saving money on premiums. Thinking that Mr. Schneider desired to switch to excess coverage Mr. Cline obtained his Blue Cross/Blue Shield policy numbers in anticipation of the change.

Mr. Schneider had no recollection of this conversation with Mr. Cline. On the contrary he stated that in several

conversations with a Lindenmuth–Cline employee named Linda in 1983 and 1984, he specifically requested the continuation of primary coverage. The only Linda employed by the agency did not begin work until 1988.

In 1984 Mr. Cline arranged for the transfer of Mr. Schneider's auto insurance from Motorists to Aetna, and also arranged the switch from primary to excess coverage. A copy of the policy, which included language concerning the coordination of benefits, was mailed to Mr. Schneider who was billed for the lesser, excess coverage, premium. In 1985, while the Aetna policy was in effect, Mr. Schneider, his wife and son were injured in an automobile accident.

Believing that they were entitled to primary, or double dip coverage, Mr. Schneider instituted this action sounding in breach of contract and negligence against the Lindenmuth–Cline Agency, Pat Cline and Aetna Insurance. The parties stipulated Plaintiff's damages to be $18,478.93. The case went to trial before a jury, who on January 15, 1991, returned a verdict for the defendants. Plaintiff filed timely post trial motions.

 Turning to the first issue, our standard of review of an order denying judgment n.o.v. is limited. We must determine whether there was sufficient competent evidence to sustain the verdict. *Wenrick v. Schloemann–Siemag Aktiengesellschaft, et al.,* 523 Pa. 1, 4, 564 A.2d 1244, 1246 (1989); *Ingrassia Construction Co., Inc. v. Walsh,* 337 Pa.Super. 58, 61, 486 A.2d 478, 480 (1984). In so doing, we must grant the verdict winner the benefit of every inference which reasonably may be drawn from the evidence. We also must reject all unfavorable testimony and inferences. *Ingrassia, supra. See also Lira v. Albert Einstein Medical Center,* 384 Pa.Super. 503, 508, 559 A.2d 550, 552 (1989); *Jewell v. Beckstine,* 255 Pa.Super. 238, 386 A.2d 597 (1978). Judgment n.o.v. may be granted only in clear cases, where the facts are such that no two reasonable minds could fail to agree that the verdict was improper. *Gray v. H.C. Duke & Sons, Inc.,* 387 Pa.Super. 95, 563 A.2d 1201 (1989); *Frank v. Peckich,* 257 Pa.Super. 561, 391 A.2d 624 (1978). Judgment n.o.v. may not be employed to

invade the province of the factfinder. Thus, where there is a question of fact to be resolved, this is the fact-finder's function. *Trawick v. Nationwide Mutual Insurance Co.,* 242 Pa.Super. 271, 363 A.2d 1265 (1976).

█ The trial court acted correctly in refusing to grant the Schneiders' motion for judgment n.o.v. None of the testimony adduced at trial showed that the Schneiders requested or paid for insurance coverage other than that which they received. The Schneiders received a copy of their policy shortly after it was issued and had every opportunity to review the plain language of its excess coverage provision.

The Schneiders rely upon the case of *Tonkovic v. State Farm Mutual Automobile Insurance Company,* 513 Pa. 445, 521 A.2d 920 (1987) for their assertion that judgment n.o.v. was wrongly withheld. We find that case to be inapposite.

In *Tonkovic,* the insured applied, in July 1979, for an insurance policy providing disability coverage offered by State Farm Mutual Automobile Insurance Company. It was undisputed that Tonkovic applied for coverage that would enable him to make his mortgage payments in the event of injury, without regard to where such injury might occur, or whether he might be eligible for worker's compensation benefits. An application had been filled out covering these specific points. Tonkovic paid for the policy. Three months later, Tonkovic was injured on the job and received worker's compensation benefits. Tonkovic's subsequent application for benefits under his State Farm policy was rejected. Our supreme court found that Tonkovic had applied and paid for certain coverage in advance, and State Farm then unilaterally reduced and excluded the coverage desired. It found that Tonkovic had specifically requested a type of coverage that would have protected him in the very instance before the court, but was issued a policy quite different from that which he requested. Our supreme court recognized that Tonkovic placed testimony before the jury from which the jury could conclude that Tonkovic never received a copy of the policy and had never been advised of a change in the coverage for which he had originally applied. On those facts, our supreme court held

that an insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of, and understood, the change, regardless of whether the insured read the policy. *Tonkovic* at 454, 521 A.2d at 925.

At best, the *Tonkovic* decision demonstrates the existence of factual disputes calling for jury resolution. There is nothing in that decision to form the basis for a grant of judgment n.o.v. in the Schneiders' favor. Even under the extreme circumstances present in *Tonkovic*, the issue before our supreme court was whether a jury could find that the policy exclusion was not applicable. The court stated that, on appeal, the evidence and the reasonable inferences must be viewed in the light most favorable to the verdict winner and that conflicts in testimony must be resolved in the verdict winner's favor. *Id.* at 454, 521 A.2d at 925. At the very most, the Schneiders were entitled to exactly what they received: the submission of their claim to the jury.

Turning to the Schneiders' second contention on appeal, again we find no error. The Schneiders asked for the following points for charge:

6. When an insurer elects to issue a policy different from what the insured requested, there is clearly a duty to advise the insured of the changes so made. The burden is not on the insured to read the policy to discover such changes or not read at his peril. *Tonkovic v. State Farm Mutual Automobile Insurance Company*, 521 A.2d [at] 925.

7. Where an individual applies for and prepays for specific insurance coverage, the insurer may not unilaterally change the coverage provided without an affirmative showing that the insured was notified of and understood the change regardless of whether the insured read the policy. *Tonkovic* . . . .

8. An insurer cannot unilaterally defeat the expressed expectations of the insured when the issued coverage differs materially from the coverage which the insured specifically applied, the insurer must call the difference to the attention of the insured, regardless of whether the policy language by

itself is clear. *Koval v. Liberty Mutual Insurance Company,* [366 Pa.Super. 415, 421], 531 A.2d [487], 490 (1987). Plaintiff's Supplemental Additions to the Points for Charge, submitted January 14, 1991, ruled on January 15, 1991, Trial Transcript, January 14 and 15, 1991, pp. 194, 195, R.R.Vol. II, pp. 194, 195, Brief for Appellant, pp. 17–18.

A trial judge is not bound to remold points for charge presented to him. If they are not strictly in accordance with the facts in evidence or the law of the case, she may refuse them. *Sedlitsky v. Pareso,* 400 Pa.Super. 1, 8, 582 A.2d 1314, 1317 (1990), *appeal denied* 527 Pa. 673, 594 A.2d 659 (1991). It is not error for the court to refuse a requested point for charge which is improperly formulated, and the court is not responsible for adapting the request to make it a correct statement submittable to the jury. *Parnell v. Taylor,* 266 Pa.Super. 74, 86, 403 A.2d 100, 106 (1979) (Per Price, J., with one judge concurring in the result). Points for charge which necessitate qualification or modification may be refused, for the trial judge is not to mold or restate points which are not accurate as drawn. *Solomon v. Luria,* 213 Pa.Super. 87, 246 A.2d 435, 439 (1968).

We conclude that none of the requested points here at issue accurately reflect the authorities from which they purportedly are drawn, nor do they reflect the facts at trial in this case. We therefore find no error in the trial court's rejection of the points for charge set forth above.

In the Argument portion of the Schneiders' Brief, the only authority relied upon and argued, outside of the quoted language contained in the disputed points for charge, in support of these requested points is *Tonkovic v. State Farm Mutual Automobile Insurance Company, supra.* The facts presented at trial would not support any one of the three requested points.

Lawrence Schneider had primary coverage for medical benefits under a Motorist Mutual policy. He was contacted by defendant Pat Cline concerning switching his carrier to Aetna. Cline testified, as on cross-examination, that Schneider was

interested in saving money in his insurance costs if a transfer were to be affected. Cline apprised Schneider of two possibilities for decreasing his premium costs: eliminating his property deductible since the automobile being insured was somewhat old and switching to excess rather than primary coverage on the medical benefits. Cline obtained Schneider's private hospitalization and medical benefits policy numbers in anticipation of the change from Motorist Mutual to Aetna.

Schneider did not recall this conversation with Cline, but testified that in speaking with an employee named Linda at the Lindenmuth–Cline agency in 1983 and 1984, he specifically requested the continuation of primary coverage. Cline, in 1984, arranged for the transfer of the insurance from Motorist Mutual to Aetna, with a switch from primary to excess coverage. The policy, with language concerning the coordination of benefits, was mailed to and received by Schneider in 1984. After the policy was issued, Schneider was billed for, and paid, the lower, excess coverage premium. The following year, the Schneiders were involved in an accident. Their request to secure double payment from Aetna was refused prompting this suit.

These facts will not support the points requested. As to requested point No. 6, above, the Aetna policy had not been requested by the insured but was discussed on the initiative of the agent as a possible cost-saving device. More fundamentally, the requested point omits a material clause included in the *Tonkovic* opinion. The pertinent language in *Tonkovic* is, in its entirety:

> We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. When the insurer elects to issue a policy differing from what the insured requested *and paid for*, there is clearly a duty to advise the insured of the changes so made. The burden is

not on the insured to read the policy to discover such changes, or not read it at his peril.

*Tonkovic* 513 Pa. at 454, 521 A.2d at 925 (emphasis added). In the case now under review, there is absolutely no testimony to support any suggestion that Schneider had paid for primary coverage under the Aetna policy and received something less. To the contrary, the uncontradicted testimony was that Schneider received a bill for a reduced sum, after the policy had been delivered to him, and paid that reduced sum without further inquiry.

In the same vein, requested point No. 7 was properly refused since it, also, assumes facts that were not in evidence, that is, the alleged application and prepayment for specific insurance coverage, and the unilateral change of the coverage provided. The Schneiders contend on appeal that this case is controlled by *Tonkovic.* We cannot agree.

Both of the requested points for charge, Nos. 6 and 7, when accurately related to the *Tonkovic* holding, depend upon a factual scenario not present on this appeal. Schneider did *not* prepay for specific coverage, he did *not* fill out an application for specific coverage, and he *did* receive both a reduced premium notice *and* his policy at least one year prior to the incident which triggered his claim against Aetna. We find no error in the trial court's denial of points Nos. 6 and 7.

As to requested point No. 8, this is nothing more than a restatement of points Nos. 6 and 7. The language submitted to the trial court is an excerpt from *Koval v. Liberty Mutual Insurance Company,* 366 Pa.Super. 415, 422, 531 A.2d 487, 490 (1987). In *Koval,* in quoting the language here sought to be given to the Schneider jury as request No. 8, this Court was doing nothing more than distinguishing *Tonkovic* from the case then before it, a case in which an anti-stacking clause was upheld against the insured.

We are unable to find the "crucial distinction" which energized the *Tonkovic* decision. *Tonkovic* 513 Pa. at 454, 521 A.2d at 925. We find no error in the trial court's denial of point No. 8.

In the alternative, the Schneiders argue that the trial court erred in charging the jury "as requested by the defendants." The Schneiders contend that the following portion of the court's charge was erroneous:

Now, we talked about the insurance policy and how it was issued and mailed to the insured. Now, an insured is deemed to have knowledge of the contents of an insurance policy issued to him when he has received the policy. If the terms of the insurance policy are such that upon reading the policy the insured would be aware that coverage for medical benefits would be excess over similar benefits he is deemed to have such knowledge.

If you find based upon the evidence that the language of Mr. Schneider's insurance policy included clearly worded and conspicuously displayed language to the extent that the coverage for medical benefits would be excess over similar benefits available to the insured, then the insured is not permitted to recover against any of the defendants in this case.

Trial Transcript, January 14 and 15, 1991, pp. 212–213, R.R.Vol. II, pp. 212–213.

The Schneiders also take issue with the following excerpt from the trial court's charge:

. . . . You may find in favor of the plaintiffs against the Pat Cline Agency only if you find by a preponderance of the evidence that the plaintiffs and Pat Cline or Lindenmuth-Cline specifically agreed that primary medical benefit coverage would be included in the Aetna insurance being acquired.

*Id.* at 211–212.

█ The Schneiders do not argue that the quoted language is not a correct statement of the law in Pennsylvania. They limit their objection to the charge actually given on the basis that it is "violative of the holding in *Tonkovic.*" While this may very well be true, it would not be determinative of this appeal unless we were to find that *Tonkovic* controls the outcome of this case. The Schneiders concede as much. In evaluating a claim of erroneous instructions to the jury, we

must analyze the court's charge in its entirety. *Olson v. Dietz,* 347 Pa.Super. 1, 6, 500 A.2d 125, 127 (1985). We are unable to find any error in the charge as a whole. That the charge does not parallel the holding in *Tonkovic* is of no moment, inasmuch as the unique facts and "crucial distinction" found by our supreme court in *Tonkovic* are not present here.

Our role as a reviewing court is limited to determining whether the trial court committed error in either (a) giving points for charge that were not consistent with the law and the facts, or (b) refusing to give requested points for charge which are required in order to secure a proper resolution of the dispute. On this appeal, the Schneiders advance three specific points for charge which were refused. On the trial record available to this court, we find no error in such refusal. The Schneiders, in the alternative, go on to suggest that a portion of the charge that was given was erroneous. Since the challenged portions mirror facts which were in front of the jury and set forth correct statements of Pennsylvania law, we cannot find error in those portions of the charge about which objection has been made.

Accordingly, we AFFIRM the judgment in favor of the defendants and against the plaintiffs. Judgment AFFIRMED. Jurisdiction RELINQUISHED.

FORD ELLIOTT, J., files a concurring and dissenting opinion.

FORD ELLIOTT, Judge, concurring and dissenting.

I agree with the majority that appellants' first issue is without merit. However, I must respectfully dissent to the majority's resolution of appellants' second issue which challenges the sufficiency of the jury charge.

Appellants' argument concerning the jury instructions is twofold. First, appellants argue that the trial court erred in refusing certain points they requested. Second, appellants maintain that the trial court erred in charging the jury, in part, according to appellee's request. The majority opinion

focuses only on the first part of appellants' argument. My concern is with the second part.

The majority carefully analyzes appellants' requested instructions against the backdrop of the evidence adduced at trial and concludes that the trial court did not err in refusing to charge the jury on those points. However, with respect to the part of the charge which was given as requested by appellee, and which appellants' maintain was erroneous, the majority summarily dismisses appellants' contentions by concluding that the charge is a correct statement of the law. However, I believe that an equally thorough review of that challenged part of the charge demonstrates that the trial court erred in giving this portion of the charge at all in light of the evidence adduced at trial.

At the outset, this writer admits to some confusion regarding the nature of the cause of action appellants are pursuing. The pleadings clearly sound in negligence. However, at various times during the proceeding and again in this appeal, appellants have characterized their claim as a breach of contract.[1] The contract allegedly breached is not the written insurance contract between appellants and Aetna but rather

---

1. I am mindful that based upon the allegations of the complaint, appellees, Pat Cline and Lindenmuth–Cline Agency, Inc., filed a motion for summary judgment on the basis that appellants' claim was barred by the applicable statute of limitations. In their summary judgment motion, appellees maintained that since appellants' complaint was grounded in negligence, the applicable limitations period was two years. Since suit was not filed until three years after benefits were denied, it was appellees' position that suit was time-barred. In response, appellants maintained that although their complaint contained the words negligence and misrepresentation, their action was really one for breach of contract, not the insurance contract itself, but rather the oral contract between appellants and appellees regarding the procurement of a policy of insurance. Appellants argued in response to the summary judgment motion, that appellees had agreed to secure for them the same level of coverage that appellants had under their Motorist Mutual policy. By failing to leave the medical coverage primary, appellees breached this oral agreement. Based on appellants' arguments, the trial court denied the summary judgment motion. Appellees again raised the statute of limitations argument via a motion for directed verdict. Again, the motion was denied.

 Given that the statute of limitations issue was not raised before this court, I will not concern myself with the appropriateness of the trial court's ruling in that respect.

an oral agreement to secure insurance as between appellants and appellees Pat Cline and Lindenmuth–Cline. However, based on the evidence presented at trial to establish this claim, appellants' breach of contract theory is grounded in misrepresentation and on a breach of duty of good faith and fair dealing owed by appellees to appellants. This court must take the case as presented to it and may not conform the cause of action on appeal.[2] The trial court clearly accepted appellants' characterization and instructed the jury on a breach of contract theory. In resolving the limited issue presented on appeal as to the appropriateness of the jury instructions, this court's review is not hampered by the characterization of the cause of action.

2. It is of note that the question of whether a cause of action is pled as an assumpsit or trespass claim has been of some import in this area of the law. It is arguable that the application of *Standard Venetian Blind v. American Empire Insurance Company*, 503 Pa. 300, 469 A.2d 563 (1983), may directly relate to whether an insured is suing on a breach of insurance contract claim or whether the claim sounds in tort for breach of duty and misrepresentation. As noted by Justice Zappala in dissent in *Tonkovic,*

> Unlike *Rempel* [*v. Nationwide Insurance Co.*, 471 Pa. 404, 370 A.2d 366 (1977) (discussed *infra*)], however, the Appellant in this case brought an action in assumpsit asserting that the Appellee's denial of coverage was wrongful as it was based upon a policy exclusion which was not brought to his attention. The Appellant did not set forth a separate cause of action in trespass for negligent misrepresentation, but sought only to recover on the insurance policy which had been issued. . . .
>
> . . . .
>
> . . . At no time did the Appellant move to amend or conform the pleadings to include a trespass action for negligent misrepresentation after this reference of the agent's failure to obtain requested coverage was made. Instead, the Appellant proceeded with his assumpsit claim for wrongful denial of coverage on the insurance policy which had been issued. The majority's holding depends upon its analysis of a cause of action which was not raised in the Appellant's complaint or by the theory of the case during the course of trial. Although the majority has raised a legal theory which may be applicable to the factual circumstances of this case, this Court is not at liberty to redraft the Appellant's complaint or to dispose of the appeal on legal issues which were not presented by the parties.

*Id.* 513 Pa. at 460–462, 521 A.2d at 928–929. *See also* Cohen, Stewart L., "Resolving Insurance Coverage Disputes in Pennsylvania Through Principles of Tort Law—A Bridge Over Muddied Waters." 60 Pennsylvania Bar Association Quarterly, pp. 201–205 (1989).

For appellate purposes, in reviewing a challenge to jury instructions, we must examine the charge in its entirety, against the background of the evidence adduced at trial, to determine if an error occurred. *Sweitzer v. Dempster Systems*, 372 Pa.Super. 449, 539 A.2d 880 (1988). In this case, the evidence adduced at trial sought to demonstrate the misrepresentation and breach of duty on appellees' part involving the alleged oral agreement. This evidence generally conforms to the allegations in the pleadings. It is within this context that the trial court charged the jury as follows:

Now, the plaintiff may only recover on the basis of breach of contract against Pat Cline and Lindenmuth–Cline if they prove that they had a contract with the defendants to acquire for them no-fault insurance with Aetna which provided primary coverage for medical benefits. If you find that the plaintiffs failed to prove any element of their breach of contract claim against Pat Cline and Lindenmuth–Cline then your verdict must be in favor of these defendants. If you find the essential terms of the agreement between the plaintiffs and Pat Cline or the Cline Agency were so uncertain that you cannot tell if the agreement has been kept or broken, there is not an enforceable contract, and your verdict must be in favor of Pat Cline and Lindenmuth–Cline. When determining the attempt [sic] of the parties, when entering into an oral contract is that all surrounding circumstances be examined to determine the parties' intent. You may find in favor of the plaintiffs against the Pat Cline Agency only if you find by a preponderance of the evidence that the plaintiffs and Pat Cline or Lindenmuth–Cline specifically agreed that primary medical benefit coverage would be included in the Aetna insurance being acquired.

If you find that the defendants Lindenmuth and Pat Cline furnished policies differing from what the insured requested, further that these defendants failed to advise the plaintiff of the changes made, then you may find for the plaintiffs and against the defendants.

Now, we talked about the insurance policy and how it was issued and mailed to the insured. Now, an insured is deemed to have knowledge of the contents of an insurance policy issued to him when he received the policy. If the terms of the insurance policy are such that upon reading the policy the insured would be aware that coverage for medical benefits would be excess over similar benefits he is deemed to have such knowledge.

If you find based upon the evidence that the language of Mr. Schneider's insurance policy included clearly worded and conspicuously displayed language to the extent that the coverage for medical benefits would be excess over similar benefits available to the insured, then the insured is not permitted to recover against any of the defendants in this case.

(N.T., Vol. 2 at 211–13.)

Appellants maintain that the trial court erred in giving that portion of the jury charge which instructed that if the jury found that the insurance policy included clearly worded and conspicuously displayed language regarding medical benefits, then appellants could not recover against any of the appellees. I agree.

The objectionable charge is taken directly from the holding of our supreme court's decision in *Standard Venetian Blind Co. v. American Empire Insurance Co., supra.* In *Standard Venetian Blind,* the supreme court reversed this court's holding in *Hionis v. Northern Mutual Insurance Co.,* 230 Pa.Super. 511, 517, 327 A.2d 363, 365 (1974), which stated that:

[W]here a policy is written in unambiguous terms, the burden of establishing the applicability of the exclusion or limitation involves proof that the insured was aware of the exclusion or limitation and that the effect thereof was explained to him.

The supreme court instead decided that:

We hold only that where, as here, the policy limitation relied upon by the insurer to deny coverage is clearly worded and conspicuously displayed, the insured may not avoid the

consequences of that limitation by proof that he failed to read the limitation or that he did not understand it.

*Standard Venetian Blind* 503 Pa. at 307, 469 A.2d at 567.

What is critical to an understanding of this holding, however, is that *Standard Venetian Blind*, was decided in the context of a declaratory judgment action seeking a determination of coverage issues under a written policy of insurance. The supreme court looked to the clear and unambiguous exclusionary language in the policy and decided as a matter of law that the language of the contract controlled and therefore the court would not look to negotiations leading up to the contract. Applying age old contract principles, the court stated:

> We believe that the burden imposed by *Hionis* fails to accord proper significance to the written contract, which has historically been the true test of parties' intentions. By focusing on what was and was not said at the time of contract formation rather than on the parties' writing, *Hionis* makes the question of the scope of insurance coverage in any given case depend upon how a factfinder resolves questions of credibility.

*Id.* at 306, 469 A.2d at 567. Undeniably, were appellants herein suing on the insurance contract supplied by Aetna, I would agree that as a matter of law the contract was clear and unambiguous as to the medical benefits coverage question. In such a case, a jury question is not presented.[3] However, what distinguishes this case from *Standard Venetian Blind*, is that appellants' claim is not based on a breach of the policy of insurance. Rather, appellants sued Pat Cline and Linden-

---

3. I must query whether the section of *Standard Venetian Blind* charged to the jury in this instance could ever provide the basis for a *jury* charge. The function of a jury is to resolve issues of fact. The *Standard Venetian Blind* charge given herein resolves an issue of law since, "[g]enerally, interpretation of unambiguous writings falls within the province of the court, while interpretation of ambiguous writings is a matter for the jury." *Koval v. Liberty Mutual Insurance Co.*, 366 Pa.Super. 415, 423, 531 A.2d 487, 491 (1987).

Thus, while the charged portion of *Standard Venetian Blind* would properly resolve an issue of law in a summary judgment motion, for instance, it seems to have no place in a charge to a jury.

muth–Cline Agency for breach of duty and misrepresentations involving an allegedly separate oral agreement to write an insurance policy.

It has long been the law of this Commonwealth that insurers and their agents are held to a duty to deal fairly and openly with their insureds. *See Dercoli v. Pennsylvania National Mutual Ins. Co.*, 520 Pa. 471, 554 A.2d 906 (1989); *Fedas v. Insurance Co. of the State of Pennsylvania*, 300 Pa. 555, 151 A. 285 (1930); *Miller v. Keystone Insurance Co.*, 402 Pa.Super. 213, 586 A.2d 936 (1991); and *Banker v. Valley Forge* (Banker II), 401 Pa.Super. 367, 585 A.2d 504 (1991). Appellants' alleged that appellees breached that duty in obtaining coverage through Aetna which differed from. that requested by Mr. Schneider. Indeed, appellants presented evidence at trial that they never requested the coordination of benefits clause, never signed any form requesting or acknowledging such a change, and were never informed that this clause had been incorporated in their new policy with Aetna. Appellees, naturally, presented conflicting testimony. Such factual conflicts in similar cases have been determined to be a question for the jury. *See Tonkovic, supra,* and *Rempel v. Nationwide Insurance Co., supra.* Indeed, even the trial court, in the portion of the charge to the jury preceding the *Standard Venetian Blind* charge acknowledged the existence of numerous questions of fact which would have to be resolved by the jury. This is precisely what takes this case outside the purview of *Standard Venetian Blind.* Therefore, when the trial court additionally charged the jury in a way that is only consistent with an action seeking recovery solely under the insurance contract, it effectively precluded the jury from properly resolving those factual inconsistencies on which they were also charged.

The portion of the charge which characterized the *Standard Venetian Blind* holding is, in essence, an "all-or-nothing" proposition. The jury is instructed that if they find that the particular clause of the insurance contract at issue is clearly worded and conspicuously displayed, then they cannot find in favor of the plaintiff. Such an instruction is erroneous in-

stantly, since appellants were not seeking to recover against appellees on a breach of the written insurance contract. Rather, it is precisely because the policy language so clearly prohibited recovery, that they were suing on the theory of negligent misrepresentation in the context of an oral agreement to write insurance. Thus the *Standard Venetian Blind* charge given by the trial court in this instance was erroneous.

I agree with appellants that cases such as *Rempel, supra,* and *Tonkovic, supra,* more closely parallel the present factual situation and theory of the case. *Rempel,* for instance, was a trespass action wherein there was a factual dispute between the insured and the insurer as to precisely what type of coverage was requested and subsequently provided. Specifically, Mr. Rempel, in 1961, called his Nationwide agent and asked if he could match a life insurance policy offered by a competing company, whereby upon Rempel's death the balance on his mortgage would be paid off plus an additional $5,000 benefit would be paid to Rempel's wife. The Nationwide agent represented that a specific whole life policy offered by Nationwide would afford the same level of benefits as the competitor's policy. However, upon Rempel's death, the Nationwide policy failed to provide such a level of benefits. Mr. Rempel filed a trespass action against the agent and Nationwide, alleging misrepresentation. There was conflicting evidence at trial as to what representations were made by Nationwide's agent to the Rempels. Accordingly, the trial court properly allowed the factual conflicts to be resolved by the jury.

Similarly, in *Tonkovic, supra,* a case decided after *Rempel* and relying upon it, there were certain factual disputes which were properly left to the jury for resolution. In *Tonkovic,* in the context of the assumpsit action, there arose factual inconsistencies as to whether State Farm's agent had explained all of the modifications and restrictions in the policy. Specifically, whether the agent explained that the policy would not provide disability benefits if Mr. Tonkovic's injury was compensable under worker's compensation coverage. Mr. Tonkovic had specifically requested a policy of disability insurance

which would enable him to make his mortgage payments in the event he became disabled, even if the disability was work-related and covered by worker's compensation. When Tonkovic was injured at work and State Farm refused to pay the benefits, he instituted legal action. However, in the context of this assumpsit action there were clear and definite factual disputes as to the content of the conversations between Tonkovic and State Farm's agent, regarding the scope of the policy. These factual disputes were allowed to go to the jury for resolution, and the jury's verdict was ultimately upheld by the supreme court. Indeed, in deciding *Tonkovic,* Justice Papadakos addressed *Standard Venetian Blind* and rejected it as providing the basis for granting a j.n.o.v. motion in a case where there are clearly factual disputes requiring jury resolution. Justice Papadakos, in addressing *Standard Venetian Blind,* references a portion of that case wherein the court recognized that its holding is not to be universally applied in all cases involving insurance coverage disputes. The *Standard Venetian Blind* court stated:

> Although on this record we reject *Hionis,* we note that in light of the manifest inequality of bargaining power between an insurance company and a purchaser of insurance, a court may on occasion be justified in deviating from the plain language of a contract of insurance.

*Id.* 503 Pa. at 307, 469 A.2d at 567. Justice Papadakos, in *Tonkovic,* went on further to state:

> Thus, we made it clear that our holding was not to be mechanically applied without regard to the factual context in which the claim arose. *Venetian Blind* is simply not applicable to the facts of the instant case. Neither did we intend by our decision in *Venetian Blind* to overrule or create a conflict with our decision in *Rempel v. Nationwide Life Insurance, supra,* which is clearly controlling on the instant facts. We find a crucial distinction between cases where one applies for a specific type of coverage and the insurer unilaterally limits that coverage, resulting in a policy quite different from what the insured requested, and cases where the insured received precisely the coverage that he

requested but failed to read the policy to discover clauses that are the usual incident of the coverage applied for. *Tonkovic* 513 Pa. at 453, 521 A.2d at 924–25.

Instantly, given that appellants' suit centers around the oral negotiations leading up to the formation of the insurance contract and not on the insurance contract itself, and given that there were factual disputes regarding that negotiation period, the trial court should have allowed those disputes to be resolved by the jury, as occurred in *Rempel* and *Tonkovic*. However, by charging *Standard Venetian Blind* to the extent it did, the trial court undercut the jury's fact finding role.

Finally, this distinguishment of *Standard Venetian Blind* should not be interpreted to indicate that the principles of that case have no application in a cause based upon a breach of duty and misrepresentation. Trial courts certainly may charge that a plaintiff is deemed to have knowledge of the contents of a clearly-worded insurance policy issued to him. Such knowledge is relevant to the jury in making its credibility determinations or in assessing the intent and understandings of the party relative to the breach of duty and misrepresentation claims. However, *Standard Venetian Blind* may not be charged to the extent that it removes fact finding determinations from the jury. Since that occurred in this instance, I am compelled to conclude that the erroneous instructions substantially impaired the jury's factfinding role; and therefore I would vacate the judgment in favor of appellees and remand for a new trial.