J-A04010-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MARIE CONVERSANO AND BRAD HOYT AND JOHN HOYT | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellants | : | |
| | : | |
| v. | : | |
| | : | |
| | : | No. 2094 EDA 2019 |
| PARKER OIL COMPANY, SYCAMORE ENERGY-ROCKAWAY TERMINAL, LLC AND SYCAMORE ENERGY-ROCKAWAY RETAIL, LLC T/A AND/OR D/B/A SYCAMORE COMPANIES | : | |

Appeal from the Judgment Entered June 26, 2019
In the Court of Common Pleas of Monroe County
Civil Division at No(s): 2016-Civil-5404

BEFORE: PANELLA, P.J., STRASSBURGER, J.[*], and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.: Filed: March 23, 2020

Marie Conversano-Hoyt[1], Brad Hoyt, and John Hoyt (collectively, "Owners") appeal from the judgment entered on June 26, 2019,[2] following a jury trial in a negligence action resulting in a defense verdict. The Owners suggest, *inter alia*, that the trial court erred when it did not enter judgment notwithstanding the verdict ("judgment n.o.v.") and further erred when it did

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The caption identifies Ms. Conversano-Hoyt as "Marie Conversano."

[2] ***See*** Pa.R.A.P. 108(b) (identifying that an order's entry date is the "day on which the clerk makes the notation in the docket that notice of entry of the order has been given").

not give specific jury instructions requested by the Owners. After a thorough review of the record, we affirm.

In this matter, the Owners received a delivery of heating oil while they were not present at their residence in Monroe County, Pennsylvania. The residence's locked garage held the heating oil tank; however, the delivery company, Sycamore Energy-Rockaway Terminal, LLC, ("Sycamore") accessed the tank through pipes that extended outside of the garage. The pipes were designed to emit a whistle sound that continued until the tank was full.

Approximately ten days after the oil delivery, the Owners arrived at the residence, smelled the odor of oil emanating from the garage, and saw oil spilled all over the floor in the garage. The owners contacted Sycamore, who sent a recovery/remediation company to inspect the residence. That company concluded that oil had soaked through an expansion joint between the floor slab and a cinderblock wall. Subsequently, the Pennsylvania Department of Environment Protection ("DEP") received notification of the spill and sent a notice of violation to Sycamore requiring the residence to be cleaned within fourteen days.

The Owners instituted the underlying action by filing a complaint alleging that Sycamore had been negligent in its filling of the oil tank. The complaint asserted that Sycamore caused the tank to rupture because Sycamore's employee either overpressurized or overfilled the tank, resulting in the spill. Eventually, the case proceeded to a jury trial, which resulted in a verdict in favor of Sycamore. The Owners then filed a post-trial motion, which

the trial court denied. This timely appeal followed.

On appeal, the Owners raise three issues for our review:

1) Did the trial court err when it denied the Owner's post-trial motion to vacate the jury's verdict and enter judgment n.o.v.?

2) Did the trial court err when it refused to instruct the jury as to negligence *per se* for Sycamore's admitted violation of the Pennsylvania Clean Streams Law?

3) Did the trial court err when it gave the jury a non-standard instruction pursuant to 42 Pa.C.S.A. § 6141(b) by indicating that Sycamore's clean-up and remediation of the residence pursuant to notices issued by DEP was not an admission of liability?

*See* Appellants' Brief, at 4.

In their first issue, the Owners contend that they were entitled to judgment n.o.v. because they believe testimony presented on behalf of DEP representatives in conjunction with Sycamore's own admissions conclusively established Sycamore's negligence. Our standard of review from the denial of a motion for judgment n.o.v. is well-settled:

> A motion for judgment n.o.v. is a post-trial motion which requests the court to enter judgment in favor of the moving party. There are two bases on which the court can grant judgment n.o.v.: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Stange v. Janssen Pharmaceuticals, Inc.*, 179 A.3d 45, 52-53 (Pa. Super.

2018) (formatting altered).

> In an appeal from the trial court's decision to deny judgment n.o.v., we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner. Our standard of review when considering motions for a directed verdict and judgment notwithstanding the verdict are identical. We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.

*Id*., at 53 (formatting altered and citation omitted).

> Concerning any questions of law, our scope of review is plenary. Concerning questions of credibility and weight accorded the evidence at trial, we will not substitute our judgment for that of the finder of fact.... A [judgment n.o.v] should be entered only in a clear case. [T]he entry of a judgment notwithstanding the verdict ... is a drastic remedy. A court cannot lightly ignore the findings of a duly selected jury.

*Id*. (internal quotation marks and citations omitted).

The Owners' position is that "[t]he evidence in this case is overwhelming and constitutes admissions by [Sycamore]." Appellants' Brief, at 10. Further, they contend that "[t]he uncontradicted evidence in this case clearly proves that [Sycamore] admitted that it overfilled the oil tank causing it to rupture." *Id*.

In making these assertions, the Owners rely upon the information Sycamore submitted to DEP following the spill's discovery, Sycamore's lengthy remediation work on the residence, and the fact that Sycamore did not appeal nor contest the notice of violation that it received from DEP. ***See id***., at 10-11. Accordingly, the Owners believe they irrefutably proved Sycamore's

negligence, and in that same vein, the jury's finding was unreasonable.

The "elements of negligence are: a duty to conform to a certain standard for the protection of others against unreasonable risks; the defendant's failure to conform to that standard; a causal connection between the conduct and the resulting injury; and actual loss or damage to the plaintiff." ***Brewington for Brewington v. City of Philadelphia***, 199 A.3d 348, 355 (Pa. 2018). To "prove[] … negligence," Appellants' Brief, at 11, the Owners cite to the testimony of six individuals: three DEP officials; one remediation company employee; Sycamore's President and CEO; and the Sycamore employee who delivered the oil. ***See id***., at 11-20.

The Owners first highlight the testimony of DEP Environmental Compliance Specialist Susan Thomas. Thomas stated that she had sent a DEP notice of violation, which "included Sycamore as the responsible party and directed the responsible party to initiate cleanup activities." N.T., 12/5/18, at 7 (Testimony of DEP Environmental Compliance Specialist Susan Thomas). She further testified that a remediation and consulting company hired by Sycamore, Patriot Environmental Management ("Patriot"), wrote a letter to DEP stating that the oil storage tank was "reportedly overfilled, causing the tank to rupture[.]" ***Id***., at 14.

The Owners also highlight the testimony of DEP Environmental Group Manager Thomas Coar. Coar read an email that he had written, which identified that an oil storage tank had ruptured during delivery and that

Sycamore was the responsible party. *See* N.T., 12/5/18, at 6 (Testimony of DEP Environmental Group Manager Thomas Coar). Coar went on to testify that All-State Oil Recovery ("All-State"), another remediation company acting on behalf of Sycamore, was the source of the information DEP had received on the oil spill. *See id*., at 7. Furthermore, he agreed that "the actual release of oil onto the property … violate[d] the Clean Streams Law[.]" *Id*.

DEP Licensed Professional Geologist William Craft confirmed that All-State informed DEP about the oil spill, which resulted in Sycamore being listed as the responsible party. *See* N.T., 12/5/18, at 16-19 (Testimony of DEP Licensed Professional Geologist William Craft). The description of the oil spill specified that the tank ruptured during fuel delivery. *See id*., at 21.

Thereafter, Craft informed the jury that a spill's final report, identified as the Act 2 Final Report, is generated by the responsible party and submitted to DEP. *See id*., at 25. Acting under DEP's guidance, Patriot submitted that final report on Sycamore's behalf. *See id*. Craft then discussed DEP's notice of violation sent to Sycamore and the resulting DEP-required work plans, written by Patriot. The violation letter stated that DEP had "been advised that … Sycamore … caused a release of heating oil to the environment[.]" *Id*., at 26. Sycamore never appealed DEP's notice of violation. *See id*., at 27. As to the work plan, it contained reported information and designated that the spill occurred "due to an accidental over-pressurization" of the fuel tank. *See id*., at 38.

The Owners also draw attention to the testimony of Hudson Green, Patriot's President. At trial, Green agreed that there was a sense of urgency imbued into Patriot's consulting and remediation work, as Sycamore wanted to avoid a DEP enforcement hearing. *See* N.T., 12/5/18, at 30 (Testimony of Patriot's President, Hudson Green). He acknowledged that his company sent a letter to DEP that described the reported overfilling of the oil tank and stated that his company was acting on behalf of Sycamore when the document was sent. *See id*., at 31-32. Patriot also mailed a subsequent intent to remediate letter, which identified that there had been an accidental release of oil during a delivery to the property. *See id*., at 33.

In addition, the Owners assert that the testimony of Kenneth Morrison, President and CEO of Sycamore, establishes that the companies hired by Sycamore were authorized to submit communications on the company's behalf to DEP. *See* Appellant's Brief, at 18.

Finally, the last witness relied upon by the Owners, Michael Fiore, the Sycamore employee who delivered the oil, admitted that he knew the tank was filled when the apparatus started to mist oil out of the whistle pipe and onto his person. N.T., 12/5/18, at 34 (Testimony of Sycamore Delivery Driver Michael Fiore). Mr. Fiore concluded that "when it mists you in the face, the tank is full; you can't put any more in." *Id*., at 35.

Even if we were to assume the jury believed every aspect of the testimonies illuminated by the Owners, we cannot conclusively say that they

have demonstrated, through uncontestable evidence or as a matter of law, Sycamore was negligent in its actions. Specifically, even though the Owners do not delve into the elements of negligence in their brief or cite to anything other than our judgment n.o.v. standard of review, reasonable minds could clearly disagree over whether Sycamore actually caused the injury suffered by the Owners, and further, even if Sycamore somehow causally affected some aspect of the oil spill, those same minds could differ over whether Sycamore, in fact, breached its duty of care.

First, DEP did not perform any investigation as to how, if, or why Sycamore was responsible for the tank's failure. **See** N.T., 12/5/18, at 53 (Testimony of DEP Licensed Professional Geologist William Craft). Instead, "it is DEP's policy to automatically name the oil delivery company as a responsible party[.]" **Id**. The result is that "the oil delivery company is getting a [notice of violation] letter *no matter what*." **Id**. (emphasis added). In fact, it does not "matter at all to DEP why the tank failed[.]" **Id**., at 58.

Second, when asked who provided the information Patriot relied on when it submitted a letter to DEP, Patriot's President indicated that it could have been one of the Owners. **See** N.T., 12/5/18, at 57-58 (Testimony of Patriot's President, Hudson Green). The cause of the tank's failure was in no way relevant to Patriot's remediation job, so it did not perform any investigative work on the property. **See id**., at 58.

Third, although they have suggested it to be true, the Owners have not

cited to any cases for the proposition that an unchallenged administrative DEP notice of violation inherently makes a "violator" liable in a civil action to an owner/private plaintiff, even though both have considerably different elements that must be proven or established. Presumably, the jury believed Sycamore's President/CEO when he testified that, instead of provoking a conflict with either the Owners or DEP, Sycamore chose the path of least resistance when it performed cleaning operations on the property. **See** N.T., 12/6/18, at 60-62 (Testimony of Sycamore President and CEO Kenneth Morrison).

Additionally, Morrison explained that a functioning vent line, indicated by the whistle sound that it produces throughout filling, cannot result in an overfilled or over-pressurized tank. **See id**., at 56-58. Furthermore, misting, which the Sycamore delivery driver described as having occurred, can happen during fuel delivery due to "frothing" if the tank had been sitting undisturbed for a while. **Id**., at 79. The jury was entitled to find this testimony to be credible, and if it did, it provided an alternative basis to explain the misting distinct from the theory submitted by the Owners.

Fourth, Sycamore's delivery driver looked into the window of the garage and "made sure before [he] left that nothing happened inside." N.T., 12/5/18, at 38 (Testimony of Sycamore Delivery Driver Michael Fiore). Upon looking, he noticed "[n]othing on the floor. The tank was dry." **Id**., at 38-39 (remarking that it was "pretty bright that day" so he "could see clearly").

Fifth, the Owners confirmed that they owned a 275-gallon tank, it was approximately half full a few days prior to delivery, and Sycamore delivered 129.7 gallons of oil. **See** N.T., 12/5/18, at 11, 20-21, 41 (Testimony of Owner Marie Conversano-Hoyt). Additionally, the Owners verified that the tank's vent line was fully operational prior to Sycamore's delivery. **See** N.T., 12/6/18, at 62-63 (Testimony of Owner Brad Hoyt).

In viewing the evidentiary record in a light most favorable to Sycamore as the verdict winner, we do not find that the trial court either abused its discretion or committed an error of law in refusing to grant judgment n.o.v. At a minimum, based on the evidence adduced at trial, we cannot say this case is one that clearly warrants overturning the verdict of a duly selected jury. The jury, sitting as factfinder, was free to make its credibility determinations in the manner that it so chose.

None of the evidence now proffered and discussed by the Owners irrefutably establishes that Sycamore was negligent in its actions nor has Sycamore admitted to being at fault. While, clearly, DEP's actions and paper record can be utilized in a private civil case, the evidentiary value of DEP's information gathering on a *pro forma* basis, where it 1) does not care how or why the oil spill occurred and automatically assigns blame to the company providing the fuel, 2) does not investigate nor question the source of the material that it receives, and 3) possibly utilized information from one of the interested Owners in gathering facts and ascribing fault, is a question of

credibility for the jury. Accordingly, the Owners' first issue fails.

The Owners' second suggested error asserts that the trial court erred when it failed to "instruct the jury on negligence *per se* … despite testimony … that [Sycamore] violated the Pennsylvania Clean Streams Law[.]" Appellants' Brief, at 20. We disagree.

> When an appellate court reviews a challenge to the trial court's refusal to give a specific jury instruction, the court's role is to determine whether the record supports that decision. In fulfilling this role, we must keep in mind that a trial court should charge on a point of law when there is **some factual support in** the record for the charge.

*Meyer v. Union Railroad Co.*, 865 A.2d 857, 866 (Pa. Super. 2004) (citations omitted) (emphasis in original).

Negligence *per se* is "[c]onduct, whether of action or omission, which may be declared and treated as negligence without any argument or proof as to the particular surrounding circumstances." *White by Stevens v. Southeastern PA. Transp.*, 518 A.2d 810, 815 (Pa. Super. 1986). Essentially, negligence *per se* imputes strict liability on the targeted party.

While it is true that "a violation of a statute or ordinance may serve as the basis for negligence *per se*," *Wagner v. Anzon, Inc*., 684 A.2d 570, 574 (Pa. Super. 1996), such a violation does not automatically establish this precept. We have found that if "the purpose of the statute is to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public[,]" *id*., that statute cannot serve as the basis of a negligence *per se* determination. While we have found no state court opinions

- 11 -

analyzing a negligence *per se* claim in the context of the Clean Streams Law, we find **Commonwealth v. Barnes & Tucker Co.**, 371 A.2d 461 (Pa. 1977) instructive. There, the Supreme Court of Pennsylvania noted that the Clean Streams Law was not primarily concerned with the source of polluted water, but the point where the polluted water is discharged into the Commonwealth's waterways. **See id**., at 466. As a result, "the Legislature has clearly and unambiguously authorized [DEP] to require the correction of water pollution-causing conditions without regard to the source of the pollution." **National Wood Preservers, Inc. v. Commonwealth, Dept. of Environmental Resources**, 414 A.2d 37, 40 (Pa. 1980). The Clean Streams Law therefore imposes liability even in the absence of a showing of the defendant's responsibility for causing the pollution. **See id**., at 45. This strict liability scheme is only permissible as an action taken pursuant to the Commonwealth's inherent police power. **See id**., at 43.

Pursuant to this precedent, we conclude that, in the absence of an explicit directive to the contrary, the Legislature did not intend the Clean Streams Law to serve as the basis of negligence *per se* in private actions. The Clean Streams Law evinces no intent to disturb settled common law in the area of private negligence actions. Rather, the potential remedies authorized by the state's exercise of its police powers are reserved solely for statutory causes of action. **Accord Fallowfield Dev. Corp. v. Strunk**, No. 89-8644, 1990 U.S. Dist. LEXIS 4820, at *59 (E.D. Pa. Apr. 23, 1990) ("Accordingly,

this [c]ourt does not believe that the policy of the [Clean Streams Law] would be furthered by serving as the basis for a claim of negligence *per se*.").

In their brief, the Owners spend eight pages rehashing the same testimony that they outlined in their previous issue. *See* Appellants' Brief, at 23-30. Distilled down, the Owners claim that because there has been an apparent violation of the Clean Streams Law, they should have been given specific jury charges reflecting this violation as a basis for negligence *per se* liability.

Assuming, for argument's sake, that Sycamore did violate the Clean Streams Law, the Owners have not established that the law creates a basis for finding negligence *per se* in private, common law actions. Accordingly, we conclude that the Clean Streams Law did not establish explicit rights or privileges for private persons, but instead was about providing a net benefit to the public at large.

Alternatively, the record does not clearly reflect the fact that there has even been a violation of the Clean Streams Law. In fact, the testimony adduced at trial would seem to indicate that there has *not* been a violation. The Clean Streams Law makes it unlawful for a person to put, place, allow, or permit to be discharged "into any of the waters," 35 P.S. § 691.401, certain pollutants as defined by the law.

At trial, one of the DEP officials explicitly indicated that he did not know whether there had actually been a violation of the Clean Streams Law. *See*

N.T., 12/5/18, at 54-55 (Testimony of DEP Licensed Professional Geologist William Craft). Moreover, that same official confirmed that "a discharge of oil to soil alone is not a violation of the Clean Streams Law." ***Id.***, at 55.

Conversely, DEP sends a notice of violation "where contamination has *the potential* to affect the [w]aters of the Commonwealth[.]" ***Id***., at 54 (emphasis added). Craft then unequivocally stated that there had not been a Clean Streams Law violation in this instance. ***See id***., at 83. Accordingly, in the absence of either legal or factual support for the Owners' requested jury charge, we find that the trial court correctly rejected their attempt to add a negligence *per se* instruction. ***See Schneider v. Lindenmuth-Cline Agency, Inc.***, 620 A.2d 505, 508-09 (Pa. Super. 1993) ("A trial judge is not bound to remold points for charge presented to him. If they are not strictly in accordance with the facts in evidence or the law of the case, she may refuse them."). Therefore, the Owners' second issue fails.

The Owners' third issue suggests that the trial court erred by giving the jury a non-standard jury instruction. The Owners take issue with the court's statement that Sycamore's actions "in cleaning-up and remediation did not constitute an admission of liability." Appellants' Brief, at 33. In effect, the Owners argue that the "improper instruction … [meant] … that essentially the actions of [Sycamore] performing [remediation work] for over 2 years[] and pursuant to a DEP notice of violation[] meant absolutely nothing as far as [Sycamore's] liability is concerned." Appellants' Brief, at 34. Implicitly, the

Owners are arguing that because Sycamore performed remediation work, that activity would therefore make them liable in negligence. The Owners seek a new trial based on this purported error.

The at-issue jury instruction indicated that:

> Settlement with or any payment made to a person or on behalf of others for damages for destruction of property shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.

> Sycamore and the plaintiffs have not made any agreement stating that Sycamore has admitted to liability for any damage that was done to the property. As a matter of law, Sycamore's remediation of the property is not an admission of liability.

> So please keep in mind when you're making your deliberations in this matter. Just because there was remediation efforts undertaken by Sycamore is not an automatic admission of liability.

Jury Instructions, 12/6/18, at 19. The court issued this instruction based on our law identifying under what conditions a "payment" has the legal import of a settlement.

> Settlement with or any payment made to a person or on his behalf to others for damages to or destruction of property shall not constitute an admission of liability by the person making the payment or on whose behalf the payment was made, unless the parties to such settlement or payment agree to the contrary.

42 Pa.C.S.A. § 6141(b); **see also** Pa.R.E. 408, *Comment* (noting that Rule 408 is consistent with section 6141).

We are unable to say that the trial court's instruction was misleading or that it constitutes a misstatement of law. The Owners claim that "the repairs

- 15 -

and clean[-]up attempts … [were] improperly deemed to be an offer to compromise or a settlement." Appellants' Brief, at 38. This statement, the Owners contend, "not only patently misled the jury into believing that the clean-up efforts were not an admission of guilt, but also forced the jury to apply incorrect law and find [Sycamore] not liable." *Id*.

To the Owners, Sycamore's "voluntary clean-up effort for the first two months was due to either it recognizing that (a) it was responsible, or (b) that there was a violation of the law[.]" *Id*., at 39.

However, as noted previously, Sycamore agreed to remediation in order to forgo protracted litigation with DEP. *See* N.T., 12/6/18, at 60-62 (Testimony of Sycamore President and CEO Kenneth Morrison). Further, we find that the trial court's instruction only connotes that any work performed by Sycamore did not constitute an *automatic admission* of their liability; the jury was still free to find them liable based on the totality of the circumstances.

The Owners' reliance on *Hooker v. State Farm Fire and Casualty Company*, 880 A.2d 70 (Pa. Cmwlth. 2005), is wholly misplaced. There, the defendant challenged the trial court's ruling admitting evidence of minor repairs performed by the defendant on the plaintiff's property. Our sister court affirmed, concluding that a party "[t]aking responsibility for some items of damage while contesting responsibility for others does not suggest that it is an offer to compromise a disputed claim." *Hooker*, 880 A.2d at 85 (responding to the appellant's argument "that the trial court erred by

permitting evidence of minor damages … that were repaired"). Accordingly, the court was directly reviewing not a jury instruction, but whether evidence of the repairs was admissible.

Here, the court clearly permitted evidence of the remediation efforts performed by Sycamore and its hired remediation companies, and the Owners are not suggesting that the testimony of that work should not have been entered into evidence. Further, as discussed above, an admission of liability for clean-up costs under the Clean Streams Law is not equivalent to an admission of liability under the Owners' private negligence action. Even assuming that Sycamore admitted liability under the Clean Streams Law (which Sycamore denies), it does not follow that Sycamore admitted to liability to the Owners. Further, Owners can point to no explicit admission of liability by Sycamore towards them.

In summation, we find that the Owners' third issue, which contests the appropriateness of the jury instruction given on Sycamore's remediation efforts, holds no merit. While the Owners contend that Sycamore's remediation activities should have inherently meant that Sycamore was liable to the Owners for any additional damages that they may have incurred, Owners have cited to no cases that stand for that proposition. The instructions, as given, simply stated that because Sycamore did not agree to a settlement or admit to any explicit liability, its clean-up work did not imply or result in a legal admission of liability. We can find no abuse of discretion in this

instruction under the circumstances. Undoubtedly, the court's instruction did not foreclose on the possibility that the jury could have found Sycamore to be negligent. Moreover, the jury was not prevented from considering the clean-up work performed on the Owners' property and using that as evidence against the company; the jury was merely prevented from considering the work to be an automatic admission of liability.

In finding none of the Owners' claims to be meritorious, we affirm the judgment entered in this case.

Judgment affirmed.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/23/20