Sheila GUNN, Executrix of the
Estate of Deborah Gunn,
Deceased, Appellee,

v.

Monte GROSSMAN, M.D., Nelson K.
Henry, M.D., David M. Rodgers, M.D.,
Gilbert L. Zuckerman, M.D.,

Lawrence L. Livornese, M.D., Appellee.

Alan S. Berger, M.D., Michael Ko, M.D.,
Chestnut Hill Hospital, Chestnut Hill
Emergency Associates, Ltd., the Nel-
son Medical Group, P.C., Chestnut
Hill Cardiology Consultants, Ltd.
(Corp),

Appeal of David M. Rodgers, M.D.
and Chestnut Hill Cardiology
Consultants, Ltd., Appellants.

Sheila Gunn, Executrix of the Estate
of Deborah B. Gunn, Deceased,
Appellee,

v.

Monte Grossman, M.D., Nelson K.
Henry, M.D., David M. Rodgers,
M.D., Appellee

Gilbert L. Zuckerman, M.D., Lawrence
L. Livornese, M.D., Alan S. Berger,
M.D., Michael Ko, M.D., Chestnut Hill
Hospital, Chestnut Hill Emergency
Associates, Ltd., the Nelson Medical
Group, P.C.,

Chestnut Hill Cardiology Consultants,
Ltd., (Corp), Appellee,

Appeal of Lawrence L. Livornese,
M.D., Appellant.

Superior Court of Pennsylvania.

Argued Dec. 8, 1999.
Filed Feb. 23, 2000.
Reargument Denied April 25, 2000.

John P. Coyle, Philadelphia, for David M. Rogers, M.D. and Chesnut Hill Cardiology Consultants.

James P. Kilcoyne, Plymouth Meeting, for Lawrence L. Livornese, M.D.

Robert E. Slota, Bryn Mawr, for Sheila Gunn.

Before MUSMANNO, HESTER and MONTEMURO *, JJ.

HESTER, J.:

¶ 1 David M. Rodgers, M.D., Chesnut Hill Cardiology Consultants, Ltd., and Lawrence L. Livornese, M.D., appeal from the $2,798,924 judgment entered against them after a jury determined that they were liable for medical malpractice. We affirm.

¶ 2 The trial court has aptly summarized the facts as follows.

Plaintiff's decedent, Deborah Gunn, was a 33 year old who had a prior heart condition necessitating the implantation of a prosthetic heart valve some years before this incident. She had been treated for a number of years by the defendant, David M. Rodgers, her cardiologist. On the evening of January 9, 1992, the plaintiff went to the Emergency Ward of the Defendant, Chestnut Hill Hospital, with flu like symptoms. She was prescribed a penicillin based antibiotic called Augmentin and sent home. The next afternoon, January 10, 1992, since her symptoms worsened, she again appeared at the Emergency Ward. The defendant, Dr. Nelson K. Henry, who was covering for her family physician, was notified about her condition, as was her cardiologist, Dr. Rodgers. After she was admitted into the hospital, the defendant, Dr. Lawrence L. Livornese, as an infectious disease expert, was also called in for consultation. Dr. Livornese recommended the administration of another penicillin based antibiotic, Unasyn, which was prescribed intravenously. This prescription then was ordered by Dr. Rodgers and approved by Dr. Henry.[1] After three intravenous injections of four milligrams of the antibiotic at six hour intervals, the plaintiff's condition worsened to horrific proportions. She was taken off this antibiotic shortly thereafter, but to no avail. The plaintiff developed toxic epidermal neurolysis (tens). This is a disease that reacts in a somewhat similar fashion as if the patient were severely burned. Her skin began to exfoliate which in turn affected other vital organs of her body. Several days later she was transferred to the St. Agnes Burn Center where she expired on January 19, 1992.

The liability portion of the plaintiff's case was centered around the expert testimony of two certified internal medicine physicians whose subspecialty was infectious diseases. They opined that it was negligence to continue to prescribe penicillin based antibiotics after the plaintiff had exhibited an allergic reaction to the initial prescription of Augmentin. Dr. Dial Hewlett, one of plaintiff's experts, also stated that the tens was caused from this allergic reaction to

the Unasyn drug. The plaintiff also produced a Ph.D. in Pharmacology who testified that tens could occur from an allergic reaction to this penicillin based antibiotic. The defendants vigorously contested liability. The defendants denied that any malpractice was committed; nor any causal connection between the administration of the drug and harm to Ms. Gunn. This defense was supported by their experts who asserted that at the time Ms. Gunn returned to the hospital there was no reason to believe that she had suffered an allergic reaction to the original penicillin based drug. Her prior medical history contained no event which would have led the physicians to believe that she had ever had an allergic reaction to penicillin. Additionally, they maintained that she had exhibited no increased symptoms upon her return to the hospital that next afternoon. They further asserted that there was no causal connection between her allergic reaction and any harm. They maintained that the tens (if in fact that is what disease she suffered from) arose from another cause and not from the administration of the Unasyn.

----

1 Defendant, Dr. Henry, and his Medical Group, were absolved from liability. The jury found negligence on the part of Dr. Henry but no causal connection between that negligence and harm.

¶ 3 At the conclusion of the trial, the jury found in favor of Sheila Gunn, the decedent's executrix. Warren Gunn, the decedent's father, is the decedent's sole beneficiary. The jury found Dr. Rodgers and Chestnut Hill Cardiology Consultants, Ltd. thirty percent liable, and Dr. Livornese seventy percent liable. The trial court ordered that Appellants pay the following: under the Wrongful Death Act, $2,050,000, and under the Survival Act, $35,000. Delay damages amounting to $713,924 were later added, amounting to a total verdict of $2,798,924. This appeal followed.

■ ¶ 4 Appellants contend that the trial court erred in not granting a judgment notwithstanding the verdict.

In reviewing a motion for a judgment n.o.v., the evidence must be considered in the light most favorable to the verdict winner, and he must be given the benefit of every reasonable inference of fact arising therefrom, and any conflict in the evidence must be resolved in his favor. Moreover, a judgment n.o.v. should only be entered in a clear case and any doubts must be resolved in favor of the verdict winner. Further[,] a judge's appraisement of the evidence is not to be based on how he would have voted had he been a member of the jury, but on the facts as they come through the sieve of the jury's deliberations. There are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that even with all factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure. *Moure v. Raeuchle*, 529 Pa. 394, 402, 604 A.2d 1003, 1007 (1992). *Accord Nogowski v. Alemo–Hammad*, 456 Pa.Super. 750, 758–764, 691 A.2d 950, 955–57 (1997) (*en banc*), appeal denied, 550 Pa. 684, 704 A.2d 638 (1997). In making the determination of whether judgment notwithstanding the verdict is appropriate, our scope of review is plenary as it is with any review of questions of law. *Davis v. Berwind Corp.*, 547 Pa. 260, 266, 690 A.2d 186, 189 (1997). *Boutte v. Seitchik*, 719 A.2d 319, 322–23 (Pa.Super.1998). *Rohm and Haas Co. v. Continental Casualty Co.*, 732 A.2d 1236, 1247–48 (Pa.Su-

per.1999). A judgment n.o.v. should be entered only in a clear case. *Nogowski v. Alemo–Hammad, supra.*

¶ 5 If a judgment n.o.v. is not granted, Appellants seek in the alternative a new trial. A trial court's decision regarding the grant or refusal of a new trial will not be reversed on appeal absent an abuse of discretion or an error of law that controlled the outcome of the case. *Spino v. John S. Tilley Ladder Co.*, 548 Pa. 286, 696 A.2d 1169 (1997). In making this determination, we must consider, viewing the evidence in the light most favorable to the verdict winner, whether a new trial would produce a different verdict. *Robertson v. Atlantic Richfield Petroleum Products Co.*, 371 Pa.Super. 49, 537 A.2d 814 (1987). Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed. *Johnson v. Hyundai Motor America*, 698 A.2d 631 (Pa.Super.1997). With these principles in mind, we consider the propriety of the trial court's decision to deny Appellants the relief they requested.

¶ 6 Appellants argue that the evidence adduced at trial was inconsistent with the verdict. Specifically, Appellants allege that in view of the unrebutted documented evidence as to when the decedent's symptoms began, it is clear that the jury must have speculated that the TENS was caused by a reaction to the medication prescribed by Dr. Livornese. First, they cite to her illegible admission form, which does not establish when the reaction began. Next, they point to a portion of Dr. Livornese's testimony that contains no indication that a TENS reaction was apparent in Deborah prior to administration of the antibiotic. When a jury's finding is so opposed to the demonstrative facts that looking at the verdict, the mind stands baffled, the intellect searches in vain for cause and effect, and reason rebels against the bizarre and erratic conclusion, it can be said that the verdict is shocking. *Farelli v. Marko*, 349 Pa.Super. 102, 502 A.2d 1293 (1985) (citing *Green v. Johnson*, 424

Pa. 296, 298, 227 A.2d 644, 645 (1967)). Based upon a complete review of the record, it cannot be said that the jury's verdict herein is shocking. Clearly, viewing the evidence in a light most favorable to Sheila Gunn, the record supports the verdict reached in this case. For reasons that will follow, we do not think the trial court abused its discretion in denying Appellants' motion for judgment notwithstanding the verdict.

¶ 7 Appellants also argue the jury decided the case based upon sympathy, and that the plaintiff failed to establish as a matter of law that Appellants' conduct caused any alleged harm that otherwise would not have occurred. More specifically, Appellants allege there was overwhelming evidence at trial that the TENS process started before Deborah Gunn ingested the antibiotics at issue. Again, they refer to the two portions of the record that do not irrefutably establish when the reaction started. Thus, for the same reasons that a judgment notwithstanding the verdict properly was denied, Appellants' weight of the evidence challenge must fail. "[A] true weight of the evidence challenge concedes that sufficient evidence exists to sustain the verdict." *Armbruster v. Horowitz*, 744 A.2d 285, 1999 WL 1260873 (Pa.Super.1999) (citing *Commonwealth v. Murray*, 408 Pa.Super. 435, 597 A.2d 111, 115 (1991) (*en banc*)). At trial, plaintiff's entire case was that Deborah Gunn's death was caused by the negligent actions of Appellants. We find there is adequate support for this theory.

¶ 8 Dr. Crane, plaintiff's expert witness, testified that in his expert medical opinion, Ms. Gunn's TENS was triggered by an allergic reaction to the drug Augmentin. He reached this conclusion because there were no other drugs in Ms. Gunn's system at the time of her reaction that likely would cause TENS. Further, he opined that the drug Unasyn caused an even more severe reaction, ultimately causing Ms. Gunn literally to burn from the inside out. Dr. Crane informed the jury that once the

Unasyn had stopped being administered to Ms. Gunn, her condition began reversing itself. Hence, it was obvious that Ms. Gunn's condition was a result of being given the drugs Augmentin and Unasyn. Dr. Crane testified that Appellants breached their duty of care by prescribing large doses of Unasyn when they should have discovered that decedent was suffering from an allergic reaction to the Augmentin. Specifically, after taking the Augmentin, Deborah Gunn presented herself the following day with intense pain and high fever, which was an allergic reaction to the Augmentin Appellants prescribed the day prior. N.T., 1/19/99, at 123–146.

¶ 9 Dr. Tacket testified that in his expert medical opinion, the administration of Augmentin and the subsequent administration of Unasyn caused a severe allergic reaction to Ms. Gunn, ultimately contributing to her death. He believed the defendants' actions fell below the standard of care because they should have recognized from Ms. Gunn's symptoms that she was suffering an allergic reaction to the Augmentin and Unasyn. N.T., 1/20/99, at 36–38.

¶ 10 Finally, Dr. Hewlett testified that in his expert medical opinion, the administration of Unasyn was an important contributing factor to Ms. Gunn's death. He stated his belief that the Unasyn caused Ms. Gunn to experience a severe allergic reaction. N.T., 1/20/99, at 112–13. Dr. Hewlett informed the jury that he had reviewed the various tests administered to Ms. Gunn when she arrived at the hospital. Each of those tests came up negative, which indicated that the only thing which could have caused the TENS was the Augmentin and Unasyn. Id. at 113–18. Dr. Hewlett believed that Appellants breached their duty of care to Ms. Gunn by not recognizing the reaction that the Augmentin caused and by then prescribing the Unasyn. Id. at 109–112.

¶ 11 It is beyond argument that the fact-finder is free to accept or reject the credibility of both expert and lay witnesses, and to believe all, part or none of the evidence. *Gaydos v. Gaydos*, 693 A.2d 1368 (Pa.Super.1997). The weight to be assigned to expert testimony lies within the province of the jury. *Flanagan v. Labe A.F.L.-C.I.O.*, 446 Pa.Super. 107, 666 A.2d 333, 335 (1995). Herein, the jury considered the testimony of Appellee's experts as well as Appellants' experts and obviously believed the former. This was within their province. We further note that the record does not reflect any basis for concluding the verdict was based solely on sympathy, as Appellants contend. Thus, because there was support for Appellee's theory that Appellants' actions were a substantial cause of Deborah Gunn's death, we will not find that the jury's verdict was so contrary to the evidence that it shocks the conscience. This issue has no merit.

¶ 12 Appellants also allege that the trial court erred in refusing to grant a remittitur of the jury award.

Normally, the determination of the amount of damages that a person is to be awarded for pain and suffering, both past and future, is primarily a jury question. *Stoughton v. Kinzey*, 299 Pa.Super. 499, 445 A.2d 1240, 1242 (1982). Judicial reduction of a jury award for compensatory damages is appropriate only when the award is plainly excessive and exorbitant in a particular case. *Haines v. Raven Arms*, 536 Pa. 452, 455, 640 A.2d 367, 369 (1994), *supplemented by* 539 Pa. 401, 652 A.2d 1280 (1995). The trial court may grant a request for remittitur only when a verdict that is supported by the evidence suggests that the jury was guided by partiality, prejudice, mistake or corruption. *Krysmalski by Krysmalski v. Tarasovich*, 424 Pa.Super. 121, 622 A.2d 298, 312 (1993) (*en banc*), appeal denied, 535 Pa. 675, 636 A.2d 634 (1993).

"A remittitur should fix the highest amount any jury could properly award, giving due weight to all the evidence offered." *Cashdollar v. Mercy Hospital*

*of Pittsburgh,* 406 Pa.Super. 606, 595 A.2d 70, 76 (1991). Therefore, the correct question on review is whether the award of damages "falls within the uncertain limits of fair and reasonable compensation or whether the verdict so shocks the sense of justice as to suggest that the jury was influenced by partiality, prejudice, mistake, or corruption." *Haines v. Raven Arms, supra,* (citing *Carminati v. Philadelphia Transportation Co.,* 405 Pa. 500, 509, 176 A.2d 440, 445 (1962)). On appeal, the Superior Court is not free to substitute its judgment for that of the fact finder. *Botek v. Mine Safety Appliance Corp.,* 531 Pa. 160, 166, 611 A.2d 1174, 1176 (1992). Rather, it is our task to determine whether the post-trial motions judge committed a "clear" or "gross" abuse of discretion when conducting its initial evaluation of a defendant's request for remittitur. *Id.* at 165, 611 A.2d at 1176. *Doe v. Raezer,* 444 Pa.Super. 334, 664 A.2d 102, 105 (1995).

¶ 13 The jury awarded $2,050,000 under the Survival Act and $35,000 under the Wrongful Death Act. The trial court did not find this award to be excessive nor did it shock the court's conscience. Appellee was entitled to compensation under those Acts for lost earnings, lost earning potential, pain and suffering, medical and funeral expenses, and loss of decedent's society and comfort. Appellants maintain that the evidence did not support the award of damages imposed by the jury and the verdict could only be the product of speculation and sympathy. David Bunin, an actuarial economic consultant, testified that Deborah Gunn's estimated earnings, had she lived, would have ranged between $564,158 and $937,117.

¶ 14 We also note that Deborah Gunn suffered intense discomfort and excruciating pain for nine days while her internal organs rapidly became debilitated. Further, her skin burned to the extent more than forty percent of her body suffered third degree burns. She suffered intensely and immensely from the time the Augmentin was administered through the administration of the Unasyn until her death. The evidence supports the amount the jury awarded. Further, as noted, the determination of the amount to be awarded for pain and suffering is primarily a jury question. The trial court did not err in refusing to grant a remittitur. The award was properly permitted to stand. This issue is meritless.

¶ 15 Appellants contend that the trial court improperly permitted Dr. Crane to read into the record an opinion on the ultimate issue from the consultant report of Dr. Ronald Asper in order to bolster Dr. Crane's credibility. Dr. Asper did testify at trial but could not render an opinion concerning the cause of Ms. Gunn's TENS because he was not timely identified by Appellee as an expert witness who would give such an opinion. The record establishes that Dr. Asper is an infectious disease doctor and that he personally observed Deborah Gunn for four days after she had been brought to the St. Agnes Burn Center.

¶ 16 The trial court permitted Dr. Crane to comment on Dr. Asper's opinion. The court reasoned that under our decision in *Sheely v. Beard,* 696 A.2d 214 (Pa.Super.1997), a medical expert is permitted to express an opinion based on matters contained in the medical record of the plaintiff. In *Sheely,* the defendant's expert medical witness testified regarding opinions and diagnoses made by three other medical doctors. She also testified by summarizing the contents of the plaintiff's emergency room medical records and contents of the plaintiff's family doctor's records. We held:

It is well-settled in Pennsylvania that a medical expert is permitted to express an opinion which is based, in part, on medical records which are not in evidence, but which are customarily relied on by experts in her profession. *Cohen v. Albert Einstein Medical Center,* 405

Pa.Super. 392, 592 A.2d 720 (1991). This exception to the rule against hearsay was adopted in Pennsylvania law in 1971 in *Commonwealth v. Thomas*, 444 Pa. 436, 282 A.2d 693 (1971), and has been applied consistently since then. *See Primavera [v. Celotex Corp.*, 415 Pa.Super. 41, 608 A.2d 515]. [Moreover,] [w]hile the fact that a testifying expert may have based h[er] opinion, in part, on the diagnoses and opinions of other experts may impact the weight the jury assigns to h[er] ultimate opinion, this fact alone does not require exclusion. If the opinions expressed by other physicians are part of the type of material reasonably relied on by experts in the particular field, not only is disclosure of those opinions permissible, it is likely to be helpful to the jury in assisting it in evaluating the testifying expert's opinion. Therefore, there is no basis in reason or case law to exclude opinions or diagnoses which are reasonably and traditionally relied upon by experts. *Primavera*, 608 A.2d at 523.

*Id.* at 218. Dr. Crane, certified as an expert witness, rendered an independent opinion concerning the cause of Deborah Gunn's TENS. In reaching this conclusion, he relied in part on Dr. Asper's written observations. This was not the exclusive basis for Dr. Crane's opinion. The specific portion of Dr. Crane's testimony at issue is as follows.

[Attorney]: Did you review the St. Agnes chart as well?

[Dr. Crane]: Yes.

[Attorney]: I want to show you Plaintiff's Exhibit P–28. Can you describe what that is for the jury?

[Dr. Crane]: This is the infectious disease consult at St. Agnes, Dr. Asper.

[Attorney]: Is there an indication in Dr. Asper's consultations as to what his impression was as to the cause of Debbie Gunn's T.E.N.?

[Dr. Crane]: Yes.

. . . .

[Attorney]: Did you rely on Dr. Asper's consult in reaching your opinions in this case?

[Dr. Crane]: I relied on all the records I reviewed which includes the St. Agnes records and Dr. Asper's consult.

. . . .

[Attorney]: Is it customary for doctors and yourself to rely on observations and impressions recorded by other physicians in hospital records?

[Dr. Crane]: Yes.

. . . .

[Attorney]: What was Dr. Asper's impression?

[Dr. Crane]: It was T.E.N. Secondary to Penicillins.

[Attorney]: Is that right here on the chart?

[Dr. Crane]: Yes.

N.T., 1/19/99, at 149–150.

¶ 17 We are further guided by our Supreme Court's enunciation in *Commonwealth v. Thomas*, 444 Pa. 436, 445, 282 A.2d 693, 699 (1971), which held, "[W]here the information [concerning opinions on medical matters based on reports of others not in evidence] is that of an attending nurse or physician having personal observations and an interest in learning and describing accurately, there seems to be every reason for admitting testimony based in part on this." (quoting 3 Wigmore, Evidence § 688(4) (Chadbourn Revision)). This holding has been codified as Rule 703 of the Pennsylvania Rules of Evidence which states,

The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to the expert at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence.

■ ¶ 18 Assuming arguendo that it was error to permit Dr. Crane to comment

on Dr. Asper's opinion, the error was harmless. The evidence demonstrated that at least two other expert witnesses testified in accordance with Dr. Asper's written opinion concerning the cause of Deborah Gunn's death.

To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful to the complaining litigant. *Whitman v. Riddell*, 324 Pa.Super. 177, 180, 471 A.2d 521, 522 (1984). *See also Valentine v. Acme Markets, Inc.*, 455 Pa.Super. 256, 687 A.2d 1157, 1160 (1997). Moreover, we will not reverse the trial court's denial of a new trial unless there is a clear abuse of discretion or an error of law, which controlled the outcome of the case. *Chanthavong [v. Tran*, 452 Pa.Super. 378, 682 A.2d 334, 337–38 (1996) ] (quoting *Whyte v. Robinson*, 421 Pa.Super. 33, 617 A.2d 380, 382 (1992) (citations omitted)).

*The Birth Center v. The St. Paul Companies, Inc.*, 727 A.2d 1144, 1163–64 (Pa.Super.1999). We hold that even if Dr. Crane's portion of testimony concerning Dr. Asper's medical opinion should have been prohibited, it nevertheless did not contribute to the verdict because the evidence overwhelmingly supports the jury's verdict. *Cf. Collins v. Cooper*, 2000 Pa.Super. 22, 746 A.2d 615 (in order to find that the trial court's evidentiary rulings constituted reversible error, such rulings must not only have been erroneous but must also have been harmful to the complaining party).

¶ 19 Lastly, we note that not only were there several expert witnesses who testified in accordance with Dr. Asper's written opinion, but Dr. Asper was available for cross-examination on his opinion. Appellants' counsel could have questioned him concerning the basis for his opinion but did not. We will not reward them for failing to do so. This issue is completely without merit.

¶ 20 Finally, Appellants assert the trial court erred in not giving an "error in judgment" charge to the jury.

With respect to jury instructions, we note that the trial court is responsible for charging the jury on all relevant issues. When reviewing a challenge to a jury charge, we must examine the trial court's instruction in its entirety, against the background of all evidence presented, to determine whether error was committed. A jury charge is erroneous if the charge as a whole is inadequate, unclear, or has a tendency to mislead or confuse the jury rather than clarify a material issue. Therefore, a charge will be found adequate unless the issues are not made clear to the jury or the jury was palpably misled by what the trial judge said.

*Johnson [v. Hyundai Motor America*, 698 A.2d 631, 636 (Pa.Super.1997) ], (internal citations and quotation marks omitted). A trial court may refuse to give a requested point for charge when the substance of that request has already been given in another general or specific instruction. *Butler v. Kiwi, S.A.*, 412 Pa.Super. 591, 604 A.2d 270 (1992), appeal denied, 531 Pa. 650, 613 A.2d 556 (1992). Additionally, the trial court is not bound to use the exact language of a requested jury charge; it may choose another form of expression so long as it adequately and clearly covers the subject. *Brandimarti v. Caterpillar Tractor Co.*, 364 Pa.Super. 26, 527 A.2d 134 (1987), appeal denied, 517 Pa. 613, 539 [538] A.2d 810 [496] (1988). The court may refuse to submit for the jury's consideration a point for charge that is not strictly in accordance with the facts in evidence or the law in the case. *Schneider v. Lindenmuth–Cline Agency, Inc.*, 423 Pa.Super. 73, 620 A.2d 505 (1993). Likewise, the trial court may refuse points for charge that require qualification or modification, as the court is not responsible to mold or re-

state points that are not accurate as drawn. *Id.*

*Buckley v. Exodus Transit & Storage Corp.,* 1999 Pa.Super 344, 744 A.2d 298. Appellants assert that the trial court should have instructed the jury that a physician cannot be liable for a mistake in judgment unless the mistake was negligent or reckless, and that a physician cannot be liable because a complication or bad result occurred. Our review of the record indicates the court informed the jury, *inter alia,* of the definition of medical negligence and the duty of care owed to Deborah Gunn. N.T., 1/26/99, at 105–107. The court then instructed the jury that if they found any of the defendants negligent, they next had to consider if that negligence was a substantial factor in causing Deborah Gunn's harm. *Id.* at 108–09, 112. Specifically, the court instructed the jury, "Now, after having defined negligence and causation, it's clear that in order for the doctors to be liable you have to find *negligence* and *causal connection* between that negligence and *harm* suffered by Deborah Gunn. So that if you don't find this, the doctors can't be liable." (emphasis added) *Id.* at 112. The record supports this instruction. Accordingly, Appellants are not entitled to a new trial on the basis of allegedly inadequate jury instructions. Appellants' proposed points for charge were sufficiently covered in the trial court's instruction. This issue is utterly devoid of merit.

■ ¶ 21 Appellant Rodgers separately raises the issue that the trial court improperly permitted Dr. Crane, a specialist in infectious diseases, to render an opinion as to the standard of care of Dr. Rodgers, a cardiologist. We note that the record reflects that both Dr. Crane and Dr. Rodgers are board-certified in internal medicine. We further note that when Dr. Crane was asked on direct examination about whether Appellants complied with the standard of care, Appellants' counsel did not raise any objection. N.T., 1/19/99, at 128.

The qualification of an expert witness is a matter within the sound discretion of the trial court and will not be reversed absent an abuse of discretion. *Commonwealth v. Bennett,* 471 Pa. 419, 370 A.2d 373, 375 (1977). In Pennsylvania, the standard for qualification of an expert is a liberal one and the test to be applied is whether the witness has a reasonable pretension to specialized knowledge on the subject under investigation. If he does, he may testify and the weight given to that testimony is for the fact-finder to determine. *Commonwealth v. Gonzalez,* 519 Pa. 116, 546 A.2d 26, 31 (1988)(emphasis added). "It is also well established that an expert may render an opinion based on training and experience; formal education on the subject matter is not necessarily required." *Commonwealth v. Copenhefer,* 553 Pa. 285, 719 A.2d 242, 254–55 (1998) (citing *Miller v. Brass Rail Tavern, Inc.,* 541 Pa. 474, 664 A.2d 525, 528 (1995)). *Commonwealth v. Puksar,* 559 Pa. 358, 740 A.2d 219, 226 (1999). *See also Estate of Pew,* 409 Pa.Super. 417, 598 A.2d 65, 69 (1991) (experts in one area of medicine may be found to be qualified to address other areas of specialization where the specialties overlap in practice or where the specialist has had experience in a selected field of medicine). Dr. Crane submitted his credentials to the trial court, which accepted him as an expert witness. Dr. Crane's testimony concerned the prescription of Augmentin and Unasyn as well as the symptoms which give rise to an allergic reaction to antibiotic medication. This issue is applicable to all physicians who prescribe medication. Dr. Crane clearly was permitted to render an opinion concerning another doctor's alleged breach of a duty by prescribing these antibiotics when there were symptoms of an allergic reaction.

■ ¶ 22 Appellant Livornese separately raises the issue that the trial court erred in awarding delay damages under the particular circumstances of the case.

Delay damages were assessed under the Survival Act in the amount of $701,213 and under the Wrongful Death Act in the amount of $12,711, raising the jury verdict award from $2,085,000 to $2,798,924. Pa. R.C.P. 238 permits a successful plaintiff in certain civil actions to recover damages for delay, *i.e.*, interest on the amount of his award. The purpose of Rule 238 is two-fold: "(1) to alleviate delay in the courts, and (2) to encourage defendants to settle meritorious claims as soon as reasonably possible." Pa.R.C.P. 238, 1988 Explanatory Comment, citing *Laudenberger v. Port Authority of Allegheny County*, 496 Pa. 52, 436 A.2d 147 (1981); *see also Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986). The Rule provides in relevant part:

RULE 238. DAMAGES FOR DELAY IN AN ACTION FOR BODILY INJURY, DEATH OR PROPERTY DAMAGE

(a)(1) At the request of the plaintiff in a civil action seeking monetary relief for bodily injury, death or property damage, damages for delay shall be added to the amount of compensatory damages awarded against each defendant or additional defendant found to be liable to the plaintiff in the verdict of a jury ... and shall become part of the verdict, decision or award.

(2) Damages for delay shall be awarded for the period of time

(i) in an action commenced before August 1, 1989, from the date the plaintiff first filed a complaint or from a date one year after the accrual of the cause of action, whichever is later, up to the date of the award, verdict or decision; or

(ii) in an action commenced on or after August 1, 1989, from a date one year after the date original process was first served in the action up to the date of the award, verdict or decision.

. . . .

(b) The period of time for which damages for delay shall be calculated under subdivision (a)(2) shall exclude the period of time, if any,

(1) after which the defendant has made a written offer of

(i) settlement in a specified sum with prompt cash payment to the plaintiff, or

(ii) a structured settlement underwritten by a financially responsible entity, and continued that offer in effect for at least ninety days or until commencement of trial, whichever first occurs, which offer was not accepted and the plaintiff did not recover by award, verdict or decision, exclusive of damages for delay, more than 125 percent of either the specified sum or the actual cost of the structured settlement plus any cash payment to the plaintiff; or

(2) during which the plaintiff caused delay of the trial.

¶ 23 Appellant's delay damages were calculated using the time-frame from December 7, 1994, one year after the complaint was filed, through January 27, 1999, the date of the verdict. The trial court reduced the delay damages to reflect the periods in which delay damages would not be applicable. The trial court noted in its opinion the periods to which the delay damages did not apply. Specifically, the trial court stated,

Plaintiff's claim for delay damages, pursuant to the defendant's request, was reduced to reflect the following time periods which were excluded from computation: October 10, 1996 – January 8, 1997 and January 21, 1998 – April 21, 1998. The former time period was excluded because plaintiff was unrepresented. Prior counsel had withdrawn his appearance and present counsel did not enter his until January 8, 1997. In addition, the defendants were insured by Physicians Insurance Company (PIC) which became insolvent. The time period in which a stay order was issued by the Commonwealth Court due to the

bankruptcy of PIC also was excluded. The defendants also had sought to exclude a time period in which discovery deadlines were extended to accommodate present counsel after his entry of appearance. This request was denied since delays in discovery generally are not excluded. There was nothing in this record to prevent defendants from extending an offer to settle during this period nor was there anything in the record to indicate that trial was delayed because of these discovery extensions. See Explanatory Comment – 1988, 238 Pa.R.Civ.Pro.

Trial Court Opinion, 5/17/99, at 5–6. We have reviewed those dates and have determined that they were proper. The trial court's award of delay damages was appropriate in this case. Accordingly, this issue is meritless.

¶ 24 Judgment affirmed.