## Presley v. SEPTA

*Louis I. Lipsky,* for plaintiffs.
*Daniel P. McElhatton,* for defendant.

FIELD, *J.,* August 2, 2000—Defendant, Southeastern Pennsylvania Transportation Authority, appeals from this court's order of April 14, 2000, granting plaintiffs' post-trial motion and ordering a new trial. For the reasons which follow, the motion was properly granted, and the grant of a new trial should be affirmed.

This case arises from an accident which occurred on November 12, 1997, in which decedent Givonte Presley was struck and killed by a trolley owned and operated by defendant SEPTA. A jury trial commenced on October 18, 1999. After five days of trial, a verdict was returned. At that time both parties noted an inconsistency in the verdict. The jury was allowed to deliberate again and render a second verdict. Following the second verdict, both sides filed post-trial motions relating solely to the handling of the verdict inconsistency. No other trial issues having been raised, all other objections are deemed waived for the purposes of appeal. .

Briefly, the events leading to this case are as follows. Givonte Presley was playing in front of the public library when his ball went into the street. He went into the street to retrieve it, passing between two parked cars mid-block. A passing trolley struck and killed him. The jury was instructed as to the definitions of both negligence and substantial factor. They were told to first determine if the SEPTA driver was negligent. If so, they were to determine if his negligence was a substantial factor in causing the decedent's death. The jurors were instructed that if they found the answers to the first two questions to be "yes," then they had to decide if the decedent had also been negligent and, if so, if his negligence was a substantial factor in causing his own death. The court further explained that if the negligence of both the driver and the decedent had been substantial factors in causing decedent's death, the jury would have to apportion fault between the parties. The court then instructed:

"If you find plaintiff's causal negligence greater than that of the defendant, then the plaintiff is barred from recovery and you need not consider what damages should

be awarded." Notes of testimony, October 22, 1999, at 3-4.

Later that afternoon the jury returned with a verdict. Both the driver and the decedent were found to have been negligent. The jury also found that the negligence of both parties had been substantial factors in causing the accident. The jury attributed 30 percent of the causal negligence to the SEPTA driver and 70 percent of the causal negligence to the decedent. However, the jury did not stop there. An assessment of damages in the amount of $134,000 was also made. After the announcement of the verdict, but prior to the dismissal of the jury, a discussion was held at sidebar wherein plaintiffs' attorney raised the issue of the verdict's inconsistency. Defense counsel asserted that the verdict was not inconsistent and that under the law the court could properly mold the verdict to zero. After consideration, the court decided to tell the jury that under the instructions they were given and the apportionment of fault made, the plaintiffs could not recover. The court then allowed the jury to reconsider its verdict. After further deliberation, the jury returned with a second verdict, this time apportioning fault evenly. The verdict was recorded and both parties filed post-trial motions.

Plaintiffs' motion sought to have the verdict molded or, in the alternative, a new trial. Their main argument for molding the verdict is that the jury's original apportionment must have been backwards and so the verdict should be molded to apportion 70 percent negligence to the defendant instead of the plaintiff. There is nothing in the record to support this conclusion. Indeed, if that were the case, the jury's second verdict would have corrected such an error by simply reversing the percentages. Al-

ternatively, plaintiffs argue that a new trial is required because in attributing greater than 50 percent negligence to plaintiffs' decedent, the jurors clearly did not understand the court's instructions, and so the verdict is irreconcilable. The court finds the latter scenario more likely.

Defendant conversely argues that the original verdict sheet was not inconsistent; the jury merely answered more questions than were required to be answered. By sending the jury back to deliberate, the defense argues that the court, in effect, told the jury to change its factual determination. Defense would have the original verdict reinstated and the court mold the verdict to zero.

The decision whether to grant a new trial is a matter committed to the sound discretion of the trial court. Absent an abuse of that discretion or a clear error of law, the decision should not be disturbed. *Gunn v. Grossman,* 748 A.2d 1235 (Pa. Super. 2000). When, as here, a verdict is inconsistent, a court may mold the verdict if the clear intent of the jury is obvious. When the jury's intention is not clear, further deliberations may occur or a new trial ordered. *Putt v. Yates-American Machine Company B.M.,* 722 A.2d 217 (Pa. Super. 1998).

Upon review of the record,[1] the parties' motions, and their briefs thereon, the court concluded that the jury did not understand the instructions as given. Because the second verdict was not a simple correction of the first, such as eliminating the damages amount or reversing the percentages as plaintiffs would have us do, the verdict was found to be flawed. Hence, a new trial is warranted.

---

1. Only limited portions of the transcript, relating to the relevant portions of the jury charge and the reading of the verdict were requested by the parties and transcribed.

For all of the above reasons, this court's order of April 14, 2000, granting plaintiffs' motion for a new trial, should be affirmed.