J-A29016-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM A. MCINTYRE & SONS, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| NEAL J. NAVITSKY | : | |
| | : | |
| Appellant | : | No. 920 MDA 2020 |

Appeal from the Judgment Entered September 4, 2020,
in the Court of Common Pleas of Adams County,
Civil Division at No(s):  17-S-1038.

BEFORE:   DUBOW, J., KUNSELMAN, J., and COLINS, J.*

MEMORANDUM BY KUNSELMAN, J.:                    **FILED MAY 12, 2021**

Neal J. Navitsky appeals from the judgment entered in favor of William

A. Mcintyre & Sons, LLC ("Mcintyre") in this breach of contract action.  Upon

review, we affirm.

The trial court aptly summarized the facts as follows:

[McIntyre] and [Navitsky] entered into a residential construction
contract where it was agreed that McIntyre would build a home
for [Navitsky] at 55 Plum Run Road, New Oxford, PA. The agreed
upon price for this home was for $290,521.00, with $30,000 of
that amount being credited to [Navitsky] for work he agreed to do
on his own.  The contract included language that required signed
change orders for all additional work not specifically included in
the contract.   As an ancillary to the contractual agreement,
[Navitsky] entered into a draw schedule with his lender York
Traditions Bank.  Per the draw schedule, [McIntyre] would be paid
in increments for work completed on the home.   During the
process of building [Navitsky's] home, [McIntyre] presented

_____

* Retired Senior Judge assigned to the Superior Court.

[Navitsky] with at least one verifiable change order, and credible evidence suggested as many as three change orders were presented for [Navitsky] to sign. These change orders were for extra expenses that arose because [Navitsky] requested changes to the originally agreed upon scope of work. The parties had a good and trusting working relationship. Therefore, [McIntyre] performed some or all of the requested additional items of work to [Navitsky's] home before the change orders were signed, as [McIntyre] expected no issue because [Navitsky] specifically requested these changes. The total amount of the change order request, after deductions and credits to [Navitsky] for additional items in the original contract that [Navitsky] was now completing on his own, came to $9,375.00. [Navitsky] however, refused to sign the change orders, despite the fact that [McIntyre] completed the extra work. Therefore, [McIntyre] sought legal advice from counsel.

At the same time [McIntyre] performed the extra work, [McIntyre] also performed a substantial amount of the work covered by draw schedule four. As a result of that work, the total amount owed to [McIntyre] under draw schedule four was $41,318.37. [McIntyre] however, was never paid by [Navitsky] for any of that work as [Navitsky] did not authorize York Traditions Bank to release any of the draw four funds to [McIntyre]. [Instead, Navitsky kept that money.]

Upon advice from counsel, [McIntyre] stopped working on [Navitsky's] home when [he] refused to sign the change order or pay for the work done. As a result of [Navitsky] failing to sign the change order, and [Navitsky] failing to pay [McIntyre] for the extra work [McIntyre] completed under the change order and draw schedule four, [McIntyre] filed suit alleging [Navitsky] breached their contract and was unjustly enriched.

Trial Court Opinion, 4/29/20, at 1-3.

Following a bench trial on January 14, 2020, the court ruled in favor of

McIntyre on its breach of contract claim in the amount of $41,318.37 for work

contracted for, but not paid to McIntyre, under draw four. Additionally, the

court found in favor of McIntyre on its unjust enrichment claim and awarded

it $9,375.00 for extra work not included in the contract. McIntyre's total judgment was $50,693,37. Navitsky filed a post-trial motion seeking judgment notwithstanding the verdict, or alternatively, a new trial, which the trial court denied.

Navitsky filed this timely appeal. The trial court and Navitsky complied with Pennsylvania Rule of Appellate Procedure 1925.

On appeal, Navitsky raises the following issues:

1. Whether the [trial court] committed an error of law and/or abused its discretion when it denied [Navitsky's] Motion for Judgment Notwithstanding the Decision/Verdict since:

   a) the evidence was insufficient to show that [Navitsky] had anticipatorily breached the contract;

   b) the evidence established that [McIntyre] had materially breached the contract to preclude its contract claim; and,

   c) the evidence was insufficient to support an unjust enrichment award.

2. Whether the [trial court] committed an error of law and/or abused its discretion when it denied [Navitsky's] Motion for a New Trial, in the alternative, since:

   a) the Decision was manifestly against the weight of the evidence as [McIntyre's] proof failed to substantiate its claims of an anticipatory breach of the contract and unjust enrichment, and [McIntyre's] material breach of the contract also precluded its contract claim; and,

   b) the award was also excessive and against the weight of the evidence since [McIntyre] did not prove at trial that it was owed more under the contract than what it had already been paid.

Navitsky Brief at 5.

In his first issue, Navitsky claims that the trial court erred in denying his motion for judgment notwithstanding the verdict. We consider this matter with the following in mind:

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in a light most favorable to the verdict winner . . . . We will reverse a trial court's grant or denial of a judgment notwithstanding the verdict only when we find an abuse of discretion or an error of law that controlled the outcome of the case.
>
> There are two bases upon which a judgment notwithstanding the verdict can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all the factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.

*Reott v. Asia Trend, Inc.*, 7 A.3d 830, 835 (Pa. Super. 2010) (citations and internal brackets omitted), *affirmed*, 55 A.3d 1088 (2012).

In support of his claim that he was entitled to judgment notwithstanding the verdict, Navitsky makes several arguments. First, Navitsky claims that the evidence was insufficient to establish that he anticipatorily breached the contract. Specifically, he argues that, because the trial court found that the change orders were not contracts, there could not be an anticipatory breach thereof. Navitsky's Brief at 18. Additionally, he contends that the language of the contract did not require Navitsky to agree to and sign any and all change

order proposals unilaterally prepared by McIntyre. *Id.* at 19, 23, 25, 28. Consequently, Navitsky could not have breached the contract. *Id.* at 28.

We agree with Navitsky that without a contract there could be no anticipatory breach, but contrary to Navitsky's argument, the trial court did not find that Navitsky anticipatorily breached the change orders. Rather, the court concluded that Navitsky initially breached his construction contract with McIntyre by failing to sign one or more change orders as the contract required. Trial Court Opinion, 4/29/20, at 5. The trial court explained:

> [I]t was [Navitsky's] own conduct that led to [McIntyre] temporarily stopping work in the first place. The express, written contract required all changes to the terms of the contract to be included in a signed, written change order, and [Navitsky] refused or failed to sign the change orders despite the fact that [he] requested the changes and knew the extra work was performed. According to [Navitsky], he took at least one change order and simply said he needed to discuss it with his father. He believed the extra work would be done and the change order would be signed at the end of the project to sort out all of the extras and credits. In other words, [Navitsky] claimed he thought the change order would be negotiated after the project was complete. Furthermore, even after [McIntyre] stopped working on [Navitsky's] house, [McIntyre] notified [Navitsky] that it intended to resume work upon [Navitsky] signing and paying for the change order, but he still did not do so. [Navitsky] thus breached the terms of the construction contract.

*Id.* And, although the contract did not mandate that Navitsky simply sign a change order provided by McIntyre, and McIntyre performed the work without a signed change order, the contract contemplated that the change orders would be executed throughout the course of the construction and in a timely manner. Otherwise, practically speaking, construction could be delayed.

However, Navitsky failed to timely review, address, and communicate with McIntyre about the change orders. "Every contract imposes a duty of good faith and fair dealing on the parties in the performance and the enforcement of the contract." **Giant Food Stores, LLC v. THF Siler Spring Dev., L.P.**, 959 A.2d 438, 447-48 (Pa. Super. 2008), *appeal denied*, 972 A.2d 522 (2009) (citation omitted). Navitsky's conduct did not comport with this obligation.

Additionally, the trial court found that Navitsky breached the construction contract by failing to pay for certain work contracted for and completed as identified under draw four. The trial court explained:

> Brian McIntyre, one of the partner's holding an interest in the corporate [plaintiff] testified that a significant amount of draw schedule four had been completed and listed the exact work done and the corresponding amount that was owed to [McIntyre] for this work. . . . [Navitsky] did not dispute [McIntyre] performed that contracted for work. [McIntyre] never received any compensation for the work completed under draw schedule four, and in fact [Navitsky] contacted York Traditions Bank to have the funds released directly to [him] instead of the normal release to [McIntyre].

> ****

> The contract detailed the work to be done by [McIntyre] and [Navitsky] was to pay [McIntyre] for work complete. The fact that the parties had a disagreement over the change order, when most but not all of the draw four work was done, but before payment was released by [Navitsky's] bank to [McIntyre], does not mean [McIntyre] forfeits [its] right to be paid for the work [McIntyre] completed and the materials [it] supplied under draw four, and does not relieve [Navitsky] of his responsibility to pay [McIntyre] for the work that it completed under the contract. As such, it is clear to this [c]ourt that [Navitsky] breached the contract by not paying [McIntyre]. It is thus obvious to this [c]ourt that damages resulted from [Navitsky] breaching the contract in the amount of $41,318.37.

- 6 -

Trial Court Opinion, 4/29/20, at 5-6.

Based upon our review of the record and viewing the evidence in the light most favorable to McIntyre as the verdict winner, we conclude that there was sufficient evidence for the trial court to find that Navitsky breached the contract.

Navitsky next argues that McIntyre breached the contract first and therefore its contract claim was precluded. He claims McIntyre left the project and did not return to complete all of the work required. According to Navitsky, because McIntyre materially breached the contract, McIntyre was not entitled to recover any damages. Navitsky's Brief at 29.

This Court has held that "a material breach by one party to a contract entitles the non-breaching party to suspend performance." **Widmer Eng'g Inc. v. Dufalla**, 837 A.2d 459, 467 (Pa. Super. 2003). "'If a breach constitutes a material failure of performance, then the non-breaching party is discharged from all liability under the contract.'" **Id.** (quoting **Lane Enterprises v. L.B. Foster Co.**, 700 A.2d 465 (Pa. Super. 1997), **rev'd on other grounds**, 710 A.2d 54 (Pa. 1998) (internal citations omitted)). However, as discussed above, Navitsky was the one that breached the contract by failing to sign the change orders and pay for certain work for which Navitsky contracted. Consequently, under these principles, McIntyre was

justified in suspending its work on Navitsky's house and any further performance by Mcintrye was excused.[1]

Navitsky also argues that the evidence was insufficient to show that he was required to make partial payments to McIntyre. Because McIntyre did not complete all of the work for draw four, McIntyre was not entitled to damages for the portion of the work it did complete under that draw schedule. Navitsky's Brief at 38. We observe that Navitsky did not raise this issue in its concise statement of matters complained of on appeal as required under Pa.R.A.P. 1925(b). This argument is therefore waived. Pa.R.A.P. 1925(b)(4)(vii).

In Navitsky's last sufficiency argument, he claims that the evidence was insufficient to establish McIntyre's unjust enrichment claim. Navitsky's Brief at 42. Specifically, Navitksy maintains that because McIintyre overcharged him for work that was completed under the contract and paid for already, McIntryre should not be paid for any of the extra work it performed. *Id.* at 48. Navitsky bases this argument on McIntyre's deposition testimony which indicated that the work done on the house was only worth $103,900, rather than the $159,786.55 Navitsky paid McIntyre, a difference of $46,511.55. According to Navitsky, because McIntyre already received payment for the

_____

[1] We note that the trial court did not specifically state that Navitsky's breach was material. However, we infer that the trial court found it to be material based upon its conclusion that McIntyre's lack of performance was justified and did not constitute a breach of the contract.

extra work, Navitsky was not unjustly enriched. ***Id.*** at 47. Navitsky also argues that, under a theory of unjust enrichment, McIntyre may only recover the reasonable value of the services rendered, and is not entitled to a contract price which includes profit. ***Id.*** at 49.

A claim for unjust enrichment sounds in equity. We previously have held that:

> [W]hen a person receives a benefit from another, and it would be unconscionable for the recipient to retain that benefit, the doctrine of unjust enrichment requires the recipient to make restitution.... This equitable doctrine imposes on the recipient an obligation in the nature of quasi contract.

***Myers-Macomber Engineers v. M.L.W. Constr. Corp.***, 414 A.2d 357, 360 (Pa. Super. 1979) (citations omitted).

Here, as the trial court found, there was ample evidence to establish McIntyre's unjust enrichment claim. It was undisputed that Navitsky requested McIntyre to perform additional work that was not included in the original contract. Navitsky also did not dispute that McIntyre performed this extra work. The reasonable value of that extra work, which included profit, totaled $9,375 after credit for work done by Navitsky. It was also undisputed that Navitsky did not sign any change order for the extra work McIntyre performed. Consequently, there was no contract for that work and no contractual basis for McIntyre to be paid.

Based upon these facts, Navitsky clearly received a benefit from McIntyre's work. It would be manifestly unjust for Navitsky to retain that

benefit without compensating McIntyre for the value of the extra work performed. Furthermore, contrary to Navitsky's argument, payment for the extra work was separate and apart from that which Navitsky agreed to pay under the contract for the construction of his house. He is therefore not entitled to any offset for payment made in accordance with the construction contract.

Based upon our review of the record and viewing the evidence in the light most favorable to McIntyre as the verdict winner, we conclude that there was sufficient evidence to show that Navitsky was unjustly enriched by the McIntyre's extra work, and that McIntyre was entitled to payment for it.

For the reasons set forth above, we conclude that the trial court did not abuse its discretion or commit an error of law when it denied Navitsky's motion for judgment notwithstanding the verdict on both McIntyre's breach of contract and unjust enrichment claims. Navitsky's first issue fails.

In his second issue, Navitsky claims that the trial court erred in denying his request for a new trial on the basis that the trial court's decision was against the weight of the evidence. Navitsky's Brief at 52. We observe that the granting or refusal of a new trial is a matter within the discretion of the trial judge, and the judge's decision will not be reversed by an appellate court except for an abuse of discretion or an error of law. *Yacoub v. Lehigh Valley Med. Associates, P.C.*, 805 A.2d 579 (Pa. Super. 2002). "In making this decision, we must consider, viewing the evidence in the light most favorable to the verdict winner, whether a new trial would produce a different result.

Consequently, if there is any support in the record for the trial court's decision to deny a new trial, that decision must be affirmed." *Gunn v. Grossman*, 748 A.2d 1235, 1239 (Pa. Super. 2009).

In particular, when reviewing a weight claim, we are mindful of the following principles:

> Appellate review of a weight claim is a review of the [trial court's] exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*In re Estate of Smaling*, 80 A.3d 485, 490 (Pa. Super. 2013) (citing *Commonwealth v. Clay*, 64 A.3d 1049, 1055 (Pa. 2013)). The trial court may award a new trial "only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. In determining whether this standard has been met, appellate review is limited to whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion." *Samuel–Bassett v. Kia Motors Am., Inc.*, 34 A.3d 1, 39 (Pa. 2011) (citing *Commonwealth v. Cousar*, 928 A.2d 1025, 1035–36 (Pa. 2007)).

Typically, a weight claim is filed after a jury trial in the hope that the trial court judge who, like the jury, had an opportunity to hear the evidence

and observe the demeanor of the witnesses, "will conclude that the verdict was so contrary to what it heard and observed that it will deem the jury's verdict such a miscarriage of justice and trigger the court's time-honored and inherent power to take corrective action." *Criswell v. King*, 834 A.2d 505, 512 (Pa. 2003). Here, however, a non-jury trial was held. Although weight of the evidence claims have been considered in non-jury cases, there is a logical inconsistency in asking a trial judge to conclude that his non-jury decision shocked his own conscience. Notwithstanding this, we consider whether the trial court abused its discretion in determining that its own decision was not against the weight of the evidence.

In support of his claim that the verdict was against the weight of the evidence, Navitsky simply reiterates the arguments he made regarding the sufficiency of evidence. Navitsky's Brief at 53. Not surprisingly, the trial court concluded that its non-jury decision was not against the weight of the evidence. In explaining its rationale, the court stated:

> This [c]ourt's verdict was clearly supported by the evidence, and [Navitsky's] argument is without merit. ***Both parties presented testimonial evidence as to the contractual dispute, and this court found [McIntyre's] testimony compelling and credible***. . . . [Navitsky] refused to sign or even to timely negotiate or discuss the change order despite the fact that [Navitsky] knew [McIntyre] completed the extra work at [Navitsky's] specific request and for the work [McIntyre] completed under draw four. [Navitsky's] suggestion that he thought he would consider the change order terms and negotiate the price after the home was done left little assurance to McIntyre that it would be signed. Had it not been for [Navitsky's] refusal to actively discuss or sign the change order, [McIntyre] would have continued working on the house, and there is no evidence to

- 12 -

suggest otherwise.  Therefore, this [c]ourt, after weighing the evidence, found for [McIntyre] on both claims of breach of contract and unjust enrichment and this [c]ourt affirms that decision presently.

Trial Court Opinion, 4/29/20, at 8 (emphasis added).  In reaching its decision, the trial court reviewed the evidence, which was conflicting, about what transpired with the change orders.  The trial court found McIntyre's testimony to be credible.  The "factfinder is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses.  **Samuel-Bassett supra**.  A mere conflict in testimony is not a sufficient basis for a new trial. **Winschel v. Jain**, 925 A.2d 783, 788 (Pa. Super. 2007).  Furthermore, because Navitsky breached the contract first, the trial court found that McIntyre was entitled to recover under the contract terms for work it performed, but was not paid for as McIntyre was justified in stopping its work.

Finally, Navitsky argues that the trial court's award of damages to McIntyre was excessive and against the weight of the evidence.  Specifically, Navitsky argues that McIntyre did not prove at trial that it was owed $50,693,37 ($41,318.37 plus $9,375) in addition to the $159,786.55 that Navitsky already paid McIntyre.  According to Navitsky, because McIntyre failed to substantiate that the work done under the contract and paid for under prior draws was worth the total amount of money McIntyre sought, McIntyre was not was entitled to any additional payment.  Navitsky's Brief at 57. Moreover, Navitsky claims that draw schedule four was not proof that McIntyre was entitled damages for the contracted for work designated under draw

schedule four since the draw schedule was not part of the contract between the parties. *Id.* at 58.

The trial court again found that Navitsky's weight claim, regarding damages, was without merit. The trial court stated: "[T]he facts show what damages [McIntyre] suffered as a result of [Navitsky] breaching their contract and being unjustly enriched. Therefore, this claim fails." Trial Court Opinion, 4/29/20, at 10.

The trial court found the extra work McIntyre performed but not included in the contract and its associated reasonable value to be:

- Well drilling overrun - $705.00
- Additional Fill - $1,673.00
- Additional Blocks in the foundation - $1,325.00
- Six additional Pella windows - $2,094.00
- Transoms on all first floor windows - $2,094.00
- Additional cost to install 7/16" ZIP OSB sheathing - $1,400.00
- Electrical extras - $1,134.00
- Overrun for allowance on front door - $1,200.00
- Upgrade garage and master closet - $700.00
- Upgrade French family room door - $1,313.00
- Total extra work - $13,175
- Total extra work after deductions - $9,375.00

Trial Court Opinion, 4/29/20, at 6-7. At trial, Brian McIntyre identified the extra work that McIntyre performed for Navitsky. The trial court found his testimony regarding the value of the work to be credible. The court considered the normal business practice of someone who had been in the construction field for 42 years. Additionally, McIntyre presented invoices to support the amount claimed. Furthermore, as discussed above, this work was separate

and apart from the work under the contract. Therefore, Navitsky was not entitled to any offset for what was paid for the work performed under the contract.

The trial court found the work performed in accordance with the contract and listed under draw schedule four and its associated value to be:

- Siding - $10,285.00
- Soffit and Fascia - $4,983.00
- Patio Concrete - $2,627.99
- Insulation - $2,972.99
- Drywall - $14,929.20
- Furnace - $2,420.00
- Stairway - $3,100.39
- Total Amount Owed - $41,318.31

*Id.* at 4. Again, the trial court relied on the testimony of Brian McIntyre, which it found credible. He identified the work designated under draw four that McIntyre completed before it stopped working, but for which it was not paid, and the corresponding amount owed for that work. McIntyre also presented invoices to support those amounts. Furthermore, as with the extra work, Navitsky was not entitled to any setoff against what he had already been paid under the contract. Navitsky had agreed to pay $159,786.55 for the work completed under prior draws. This work was in addition to that work. Navitsky agreed to pay for work done under the contract. At trial, McIntyre established the value of the additional work performed under the contract.

Based upon our review of the record and the trial court's rationale for concluding that its decision was not against the weight of the evidence, we

conclude that the court did not abuse its discretion in rejecting Navitsky's claims. Consequently, the trial did not error in denying Navitsky a new trial.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/12/2021